Kenneth D. LAUB, Plaintiff,

v.

GENWAY CORPORATION, Defendant.

No. 73 Civ. 1046.

United States District Court, S. D. New York.

June 4, 1973.

464

Leon Brickman, Brooklyn, N. Y., for plaintiff.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant by Richard M. Michaelson, New York City, of counsel.

GURFEIN, District Judge.

This is a motion by the plaintiff for an order (1) striking and dismissing the defendant's affirmative defenses and counterclaims on the ground that they are insufficient and fail to state a claim upon which relief can be granted; (2) striking the defendant's jury demand; and (3) awarding the plaintiff judgment on its claim for $19,407.45 on the ground that there is no defense to it.

This action for rent was commenced in the State Supreme Court, New York County and removed to this Court. The defendant is a Delaware corporation with its principal place of business in Illinois; the plaintiff is a citizen of New York. The removal, on the basis of diverse citizenship, is not contested.

The complaint seeks to recover the balance of rents allegedly due Laub for the months of September 1972 through January 1973 under a twenty-five year lease with the defendant Genway dated October 7, 1968 (the "sublease").

The answer admits that an officer of Genway signed the sublease, but specifically denies that the rent reserved therein is a binding or enforceable obligation of Genway (Ans. ¶ 2). The answer also denies that Genway occupied the demised premises, but admits that Laub's co-conspirators initially occupied the premises in the name of Genway, employed the same for their own personal use and benefit and, thereafter, the premises were sublet to others (Ans. ¶¶ 4 and 5). Three affirmative defenses and counterclaims are contained in the answer. The first asserts that the sublease was fraudulently induced by Laub in furtherance of a conspiracy with certain of Genway's former controlling officers and directors (the "Tetra Group") to waste the funds of Genway and charges Laub with improperly obtaining $115,167 to date, on account of his participation in the conspiracy and further charges that he will improperly obtain another $707,458 in the future, unless Genway is afforded the relief requested in this lawsuit.

The second affirmative defense and counterclaim asserts that the sublease was fraudulently induced by Laub based upon his fraudulent misrepresentation and concealment of material facts.

The third affirmative defense and counterclaim asserts that the sublease was fraudulently induced by Laub based upon his failure to disclose his conflict of interest with Genway.

■ Since the gravamen of the motion is addressed to the sufficiency of the defendant's answer, the allegations of the pleading are deemed to be true for the purposes of this motion. See A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2 Cir. 1967).

The answer alleges facts to support the allegations of fraud. The answer alleges that in July 1968 Genway desired office space in New York and Chicago.

Since Genway was not in the real estate business and did not know about prevailing market rates it was necessary to consult a real estate expert to advise Genway and to act as its broker. Laub was presented by his co-conspirators, the Tetra Group, as the man Genway needed. Unknown to Genway, Laub and the Tetra Group had entered into a scheme to induce Genway to take more commercial office space in New York than it needed currently or in the future and to cause Genway to pay exorbitant rents for such space, all to the benefit of Laub and his co-conspirators. Pursuant to this scheme, Laub represented that he had negotiated with Interpublic on Genway's behalf for space on the 43rd floor at 1345 Avenue of the Americas, New York City. He did not disclose to Genway that he was also acting on behalf of Interpublic or that he was simultaneously negotiating with Interpublic for space on the same floor on his own behalf which he would then sublet to Genway for an unconscionable rent.

Laub and the Tetra Group represented that the fair market value of the entire 43rd floor space was approximately $300,000. In reliance on this representation, and without knowing all of the essential facts, which Laub conceded, the board of directors of Genway authorized the subleasing of the entire 43rd floor space at a maximum rental of $300,000 per year for twenty-five years, or $8.71 per square foot.

However, as part of the fraudulent scheme and without the knowledge of Genway other than the Tetra Group, Laub himself negotiated a sublease of approximately half of the 43rd floor of 1345 Avenue of the Americas from Interpublic at a base rental of approximately $8 per square foot, which was its fair market value. On the same day he entered into a sublease with a member of the Tetra Group who purportedly was acting on behalf of Genway for half of the space he had just sublet from Interpublic at a base rental of approximately $12.45 per square foot, at a profit of $4.45 per square foot. On the same day, with Laub acting as a broker, one of the Tetra Group signed a sublease on behalf of Genway with Interpublic for the other half of the 43rd floor at a base rental of approximately $9.89 per square foot, which rental was likewise substantially higher than the fair market value of $8 per square foot. These facts were purposely concealed from the non-Tetra Group members of the board of directors of Genway by Laub and the Tetra Group at the time of the transactions and thereafter. As a result, Genway entered into the sublease with Laub.

Genway did not enter into possession of the space. The Tetra Group in furtherance of the conspiracy occupied the Laub space in the name of Genway, but employed such space for its own personal use and benefit. Thereafter, the space was sublet to others at rents less than were payable by Genway to Laub and Interpublic.

I

## STRIKING THE AFFIRMATIVE DEFENSES

Genway contends that the allegations in its answer establish affirmative defenses of (1) gross waste, misapplication and dissipation of the funds of Genway by Laub and the Tetra Group; (2) fraud in that Genway asserts that had it known the truth concerning Laub's interest in and the actual fair market value of the 43rd floor space it would have authorized neither the subleasing of that space nor the expending of $692,000 to fix up the premises; and (3) breach of a fiduciary relation in that Laub had concealed from Genway his conflict of interest in negotiating the subleases for Genway. Laub argues that the facts alleged by Genway do not constitute defenses to an action for rent.

In passing on this issue we must be guided by the principles that "[m]otions to strike out are not to be

freely granted . . . and no deletions will be made unless it is clear that the allegations are without the issues . . . . Finally, a motion to strike a defense will be denied if the defense presents a bona fide question of law or fact which should be heard on its merits. . ." American Machine & Metals, Inc. v. De Bothezat Impeller Co., 8 F.R.D. 306, 308 (S.D.N.Y.1950); 2A J. Moore, Federal Practice ¶ 12.21[3]. *De Bothezat* demonstrates that unless a defense is plainly frivolous or completely irrelevant, a motion to strike such defense must be denied. *Cf.* Smith v. Piper Aircraft Corp., 18 F.R.D. 169, 177 (M.D.Pa.1955). The analogy to the requirements for granting a motion to dismiss the complaint are apparent. "The requirements for an affirmative defense are no more stringent than those for a complaint . . ·· [A] defense is good unless it appears to a certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense." Lehmann Trading Corp. v. J. & H. Stolow, Inc., 184 F.Supp. 21 (S.D.N.Y.1960).

■■ Under New York law a lease is a contract and the rules of contract law apply. 1 J. Rasch, New York Landlord & Tenant § 20 at 26 (2d ed. 1971). Consequently, an allegation of fraud will constitute a defense to a landlord's action for rent pursuant to the lease. See Dimou v. Cusanelli, 69 Misc. 2d 592, 599, 330 N.Y.S.2d 484 (Civ.Ct. Queens Co. 1972); 3 J. Rasch, *supra*, § 1306 at 120; 34 New York Jurisprudence, Landlord & Tenant § 302 at 114 (1964). Where there is fraud or misrepresentation, the lessee is not estopped to challenge the title of his landlord. Jones v. Reilly, 174 N.Y. 97, 107, 66 N. E. 649 (1903). In the instant case, Genway charges Laub with participation in a plan whereby Genway was fraudulently induced to enter into the lease in question. When the interests of those purporting to act on behalf of a corporation are adverse to the corporation's interests, the knowledge of those corporate agents is not imputable to the corporation. See Ruckle v. Roto American Corp., 339 F.2d 24 (2 Cir. 1964); Rocky River Development Co. v. German American Brewing Co., 193 App.Div. 197, 184 N.Y.S. 155 (4th Dept. 1920), appeal dismissed, 230 N.Y. 590, 130 N.E. 906 (1921). The corporation is the victim of the fraud practiced on it by its fiduciaries. And those persons acting in concert with the fiduciaries may also be held liable for the fraud perpetrated on the corporation. Schein v. Chasen, et al., 478 F.2d 817, 2 Cir. 1973; Lesnik v. Public Industrial Corporation, 144 F.2d 968, 973 (2 Cir. 1944).

■■ The affirmative defense of fraud raised by the defendant and supported by a detailed description of the fraud, Fed.R.Civ.P. 9(b), raises a substantial question of law and fact. *Cf.* Wittlin v. Giacalone, 81 U.S.App.D.C. 20, 154 F.2d 20 (1946). The motion to strike the defense based on fraud is denied.

■■ The motion to strike the defense sounding in breach of a fiduciary duty (conflict of interest) is also denied. The answer alleges that Laub was hired as an agent of Genway to advise Genway in real estate matters. Laub occupied a fiduciary relationship to Genway. While acting in relation to the subject matter of his duties, Laub, allegedly without disclosure to Genway, furthered his own interests in a manner inimical to the interests of Genway. More particularly, he allegedly acted on behalf of both principals to a lease transaction, i. e. Interpublic and Genway; he was a principal in a lease with his principal Genway, though he obtained the lease when he should have acted for Genway. He allegedly dissembled about the true nature of the lease transactions which he recommended to Genway. If proved, these allegations may well serve as a defense to Laub's action for rent. It is settled law that a fiduciary is held to

"the punctilio of an honor the most sensitive." Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928, Cardozo, C. J.). To his principal an agent owes a duty of undivided loyalty of an uncompromisingly rigid character. *Id.* See also Restatement 2d Agency § 393. "Certain it is also that there may be no abuse of special opportunities growing out of a special trust as manager or agent." Meinhard v. Salmon, *supra*, at 467, 164 N.E. at 548. *Cf.* Restatement 2d Agency §§ 387, 389. The allegations, coupled with the uncompromising rigidity with which the New York courts have invested the duty of undivided loyalty, raise substantial questions of law and fact in regard to the defendant's affirmative defense of a conflict of interest on Laub's part. That the breach of duty by an agent to its principal may serve as a defense to an action by the agent against the principal for an obligation created by virtue of the breach seems to be clear. Restatement 2d Agency § 469; see comment (a) to § 389.[1]

█ Reverting to the first claim of gross waste, misapplication and dissipation of funds of Genway by Laub and the Tetra Group, while Laub himself, who was not an officer and director, could not commit corporate waste in the leasing of the premises, he could participate in the breach of trust by aiding and abetting its commission. See Schein v. Chasen, *supra* and cases cited; and see Lesnik v. Public Industrial Corp., *supra*. The motion to strike the first affirmative defense is also denied.

**II**

**DISMISSING THE COUNTERCLAIMS**

█ All the above defenses were also asserted as counterclaims. Laub urges that Genway is barred from asserting these counterclaims because of a provision in the paramount lease between Interpublic and its lessor. That provision, Section 17.02 of the lease between Interpublic and the Fisher-Sixth Avenue Company and Hawaiian Sixth Avenue Corporation reads:

"Tenant hereby expressly waives the right to interpose a counterclaim against Landlord in any action or proceeding brought by Landlord against Tenant pursuant to this lease."

The express provision referred to in paragraph 8 of the sublease between Laub and Genway reads:

"8. This Sublease is expressly made subject and subordinate to the terms and conditions of the Prime Sublease, to the sublease between Sublandlord and Interpublic, and to any and all mortgages and/or ground leases to which the Prime Lease and/or such sublease may be or become subject and subordinate. Subtenant hereby assumes and agrees to perform all obligations of Sublandlord under its sublease with Inter-Public and to comply with and abide by the terms and conditions thereof, insofar as the same relate to the demised premises and to Subtenant's use and occupancy thereof, except for the payment of

---

1. Although under the doctrine of Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Federal Rules control the process by which this Court adjusts the substantive rights of the parties, it is instructive to note that in the summary proceedings of the courts in New York State the tenant can interpose any legal or equitable defense in order to defeat the landlord's petition for rent. N.Y. Real Property Actions and Proceedings Law § 743 (McKinney Supp. 1972 McKinney's Consol.Laws, c. 81); Jones v. Reilly, 174 N.Y. 97, 107, 66 N.E.

649 (1903); Dimou v. Cusanelli, 69 Misc. 2d 592, 330 N.Y.S.2d 484 (Civ.Ct. Queens Co.1972); 3 J. Rasch, New York Landlord & Tenant § 1306 at 120 (2d ed. 1971). Moreover it is not necessary for the tenant to surrender possession in order to raise this defense. See Metropolitan Fuel Distributors v. Coogan, 277 App.Div. 138, 97 N.Y.S.2d 851 (1st Dept. 1950). It is clear, therefore, that when Laub urges that the defenses raised here are not properly assertable in an action for rent, he misconceives both State and Federal procedure.

Sublandlord's rent, and except as otherwise expressly provided herein."

■ Contractual agreements not to assert counterclaims are enforceable in New York. De Roll Iron Works v. Webb & Knapp, 36 Misc.2d 216, 232 N.Y.S.2d 111 (Sup.Ct. Bronx Co. 1962); Orlowsky v. East House Enterprises, Inc., 32 Misc.2d 664, 228 N.Y.S.2d 19 (Sup.Ct. App.Term, 1st Dept. 1961).

There was an incorporation by reference to the paramount lease. The sublease was not a contract of adhesion but was a negotiated lease. Normally, I would think the subtenant bound on ordinary principles of contract law.

Here it is the contention of the defendant, however, that the sublease was induced by false representations and accepted on its behalf by a faithless conspirator. In the light of the allegation it cannot be clear that the defendant has waived its right to a counterclaim. The matter is not acute, however, in view of the ruling that the affirmative defenses will stand and judgment for the plaintiff denied.

In that posture the action to recover rent will, in any event, be delayed by the trial of the affirmative defenses. For that reason, even if the counterclaims are not truly compulsory counterclaims because of the alleged waiver by the defendant, the Court will allow them to stand rather than proliferate the issues.

### III

### STRIKING THE JURY DEMAND

■ The clause in the prime lease relied upon by Laub reads:

"Section 17.02. Except in the case of any action, proceeding or counterclaim brought by either of the parties ' against the other for personal injury or property damage, Landlord and Tenant waive a trial by jury of any and all issues arising in any action or proceeding or counterclaim between the parties hereto or their successors arising out of or in any way connected with this Lease, or any of its provisions, Tenant's use or occupancy of the Demised Premises and/or any claim of injury or damage."

The question remains whether the condition of the paramount lease eliminated trial by jury in the action for rent under the sublease.

My reason for allowing a jury trial on all issues is the same as that set forth with respect to the condition limiting counterclaims—the contention that the sublease itself was not the result of dealings at arm's length. The Court reserves the power, in any event, to split the trial of the issues pursuant to Fed. R.Civ.P. 42(b).[2]

### IV

### MOTION FOR JUDGMENT

Since the basis supporting Laub's motion for judgment is the striking of Genway's affirmative defenses and the dismissal of the counterclaims, the motion must be denied.

It is so ordered.

---

2. Whether there is still time to demand a jury because the counterclaim is compulsory or because the Court will allow all the issues to be tried to a jury in the Court's discretion (see 5 J. Moore, Federal Practice ¶ 38.39 [2]), the defendant may still ask for a jury within ten days of the reply to the counterclaims. Fed. R.Civ.P. 38.