See also D.C., 427 F.Supp. 1208, 427 F.Supp. 1211, Jud.Pan.Mult.Lit., 415 F.Supp. 382.

**In re TRANSOCEAN TENDER OFFER SECURITIES LITIGATION.**

MDL No. 223, Nos. 74 C 2985, 76 C 2208 and 76 C 2254.

United States District Court,
N. D. Illinois, E. D.

May 22, 1978.

Sheldon Oliensis, Allan M. Pepper, Steven J. Glassman, Edward A. Friedman, Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiffs in New York action.

Louis B. Koerner, Jr., Koerner & Lambert, New Orleans, La., for plaintiffs in Louisiana action.

Alex Elson, Willard J. Lassers, Aaron S. Wolff, Elson, Lassers & Wolff, Arthur T. Susman, Arnold M. Flamm, Richard H. Prins, Prins, Flamm & Susman, Ltd., Chicago, Ill., for plaintiffs in Illinois action.

Vinson & Elkins, Bracewell & Patterson, Houston, Tex., Mayer, Brown & Platt, Chicago, Ill., for all defendants.

## MEMORANDUM AND ORDER

ROBSON, Senior District Judge.

This cause is before the court on plaintiffs' Rule 37(a) motion for an order compelling production of documents claimed by defendants to be subject to the attorney-client privilege. For the reasons hereinafter stated, plaintiffs' motion is granted.

## BACKGROUND

This litigation arises out of a tender offer made by Vickers Energy Corporation [hereinafter Vickers], a wholly-owned subsidiary of Esmark, Inc. [hereinafter Esmark], for the minority shares of TransOcean Oil, Inc. [hereinafter TransOcean]. At the time of the tender offer, Vickers was the majority shareholder of TransOcean. While the tender offer was in progress, various minority shareholders of TransOcean commenced three actions, each in a different federal district: the Northern District of Illinois, the Southern District of New York, and the Eastern District of Louisiana. The principal defendants in these actions are TransOcean, Vickers, and Esmark, along with certain directors and officers of each of these corporations, named both individually and in their corporate capacities. Each action alleges that the defendants violated various federal securities laws because of false and misleading representations and omissions of material fact in the tender offer circular. Each action further alleges that defendants breached common law fiduciary duties owed to the minority shareholders in connection with the tender offer. In addition, one of the counts in the Illinois action is brought derivatively on behalf of TransOcean, and charges that certain transactions, unrelated to the tender offer, between TransOcean and affiliates of Esmark were unfair to TransOcean.

Both the Illinois and Louisiana actions are proceeding as class actions on behalf of TransOcean minority stockholders, including those who tendered TransOcean stock to Vickers pursuant to the tender offer. The New York plaintiffs have opted out of both classes.[1]

On May 21, 1976, the Judicial Panel on Multidistrict Litigation ordered the Louisiana and New York cases transferred to the Northern District of Illinois for coordinated

---

1. In addition to the three federal actions, a fourth action arising out of the Vickers' tender offer was commenced in Delaware state court against Vickers, Esmark, and the members of TransOcean's board of directors. This action was likewise established as a class action on behalf of minority shareholders of TransOcean. Plaintiffs in New York, as well as some class members in the Illinois action, opted out of the class. The complaint included claims under common law principles relating to fiduciary duties allegedly owed by defendants to TransOcean's minority shareholders and fraud based on alleged misrepresentations and omissions of material facts in the tender offer circular. On January 22, 1976, the Delaware Chancery Court, Chancellor William Marvel presiding, rendered an opinion in favor of defendants, *Lynch v. Vickers Energy Corp.*, 351 A.2d 570 (Del.Ch.1976), and judgment was subsequently entered in defendants' favor. On October 18, 1977, the Delaware Supreme Court unanimously reversed and remanded for a determination of damages. *Lynch v. Vickers Energy Corp.*, 383 A.2d 278 (Del.1977).

or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *In re TransOcean Tender Offer Securities Lit.,* 415 F.Supp. 382 (Jud.Pan.Mult.Lit.1976).

## THE MOTION

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, plaintiffs in all three federal actions move for an order compelling production of documents claimed by defendants to be subject to the attorney-client privilege. Plaintiffs assert that this motion is made on the grounds that (1) defendants have waived the attorney-client privilege by their affirmative use of, and reliance upon, attorney-client communications; and (2) defendants are precluded from asserting the attorney-client privilege because of the fiduciary relationships between plaintiffs and defendants. In the alternative, plaintiffs ask the court to review the assertedly privileged documents *in camera,* which review they argue will show that defendants' claims of privilege are unfounded.

Defendants have furnished the documents in question to the court for *in camera* inspection as the court deems necessary. Defendants state that their claim of privilege with respect to the documents has been upheld by Chancellor William Marvel in the Delaware case (*see* note 1, *supra*) and by Judge Alfred Y. Kirkland in the Illinois case, both of whom conducted *in camera* inspections of the documents. Defendants submit that an examination of the documents will reveal that the privilege is properly invoked and urge the court to follow the rulings of Chancellor Marvel and Judge Kirkland.

With respect to the fiduciary duty argument, defendants state that the plaintiffs in the Delaware and Illinois cases did not assert a right to privileged documents on the basis of defendants' fiduciary duties. Moreover, they assert that they did not voluntarily produce documents for fear that production would constitute a waiver of the attorney-client privilege. Nevertheless, defendants state that they "are willing to recognize a limited exception to the attorney-client privilege on the basis of their fiduciary duties and to produce those privileged documents of the majority shareholders which relate to the colorable claims of wrongful conduct alleged by plaintiffs." (Defendants' Brief at 3-4).

With regard to plaintiffs' waiver argument, defendants first assert that there has been no waiver at all because the communications disclosed in previous testimony were not intended to be confidential in the first place. Next, defendants concede that they have disclosed communications and relied on advice of counsel only with respect to the tender offer. They assert, however, that there has been no waiver of the privilege as to any other subject matter. Since they have acknowledged their duty to produce privileged documents relating to the tender offer because of their fiduciary duties, defendants submit that there are no additional documents which must be produced because of any possible waiver.

Notwithstanding the decisions of Judge Kirkland and Chancellor Marvel, the court is of the opinion that it should entertain plaintiffs' motion. For example, neither Judge Kirkland nor Chancellor Marvel decided whether the fiduciary relationships between plaintiffs and defendants preclude defendants from asserting the attorney-client privilege. Certainly the New York plaintiffs cannot be bound by either decision. In addition, Judge Kirkland's decision was made prior to the Judicial Panel's order of coordination and was made only in the Illinois case. Moreover, his decision was rendered before the Illinois plaintiffs filed a brief on the merits challenging defendants' claim of privilege. The Illinois plaintiffs explicitly reserved the right to raise the privilege question at a later date. Accordingly, the court will entertain plaintiffs' motion.

### Fiduciary Relationship

As indicated, plaintiffs submit that it is well-established that where, as here, "corporations and their officers are charged with acting inimically to the stockholders' interest, the fiduciary obligations owed those

stockholders are stronger than the policy favoring privileged communications, and the attorney-client privilege is not available in such circumstances." (Plaintiffs' Brief at 18). *Bailey v. Meister Brau, Inc.,* 55 F.R.D 211 (N.D.Ill.1972); *Valente v. Pepsico, Inc.,* 68 F.R.D. 361 (D.Del.1975); and see *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir. 1970), *cert. denied sub nom. Garner v. First American Life Insurance Co.,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), *on remand, Garner v. Wolfinbarger,* 56 F.R.D. 499 (S.D.Ala.1972); *Broad v. Rockwell International Corp.,* CCH Sec.L.Rep. ¶ 95,894 (N.D.Tex.1977).

Defendants contend that the documents at issue fall into ten categories on the basis of the transactions to which they relate.[2] Defendants recognize the authorities cited above and state that they are willing to produce documents which relate to the tender offer (category 10), except for one internal legal memorandum. Defendants state also that they are willing to produce documents which relate to inter-company borrowings (category 5) since these transactions are challenged in the Illinois plaintiffs' derivative action.[3]

Defendants, however, are unwilling to produce documents in the remaining eight categories. They assert that these documents are wholly unrelated to the tender offer and to plaintiffs' claim of wrongful conduct. Moreover, defendants contend that plaintiffs bear the burden of proving "good cause" for the production of privileged documents. They argue that if the documents have nothing to do with the tender offer or the alleged breach of fiduciary duty, there is no good cause for requiring production.

■ The court will deal first with defendants' argument that plaintiffs must make a showing of "good cause" in order to obtain the documents defendants are unwilling to produce. Plaintiffs contend, *inter alia,* that no such showing is required. Several cases have mentioned a good cause requirement. The question, however, is not whether there exists such a requirement, but rather whether—in cases such as this involving a fiduciary relationship between plaintiffs and defendants—the movant has the burden with respect to the good cause issue. That is, must plaintiffs show good cause to be entitled to the documents, or, must defendants show good cause why the documents should not be produced to plaintiffs?

In *Bailey v. Meister Brau, Inc., supra,* Judge McLaren used the term "good cause"

---

**2.** The ten categories are as follows:

   1. Documents relating to the original acquisition of a 51% interest in TransOcean by Swift & Co. (then the predecessor, and now a subsidiary, of Esmark) in 1969–1970.
   2. Documents relating to purchases and sales of TransOcean stock by officers of Swift during 1971.
   3. Documents relating to Swift's contemplated secondary offering of its TransOcean stock in 1971–1972.
   4. Documents relating to filings by TransOcean with the Securities and Exchange Commission from 1971 to 1974.
   5. Documents relating to inter-company borrowings between Esmark and TransOcean from 1972 to 1974.
   6. Documents relating to the transfer of Swift's TransOcean stock to Vickers Energy Corporation, a wholly-owned subsidiary of Esmark, in 1973.
   7. Documents relating to various ideas considered by Swift & Esmark in 1973 and 1974, but never acted on, to increase or decrease Esmark's interest in TransOcean.

   8. Documents relating to open market purchases of TransOcean stock by Esmark during 1973 and 1974.
   9. Documents relating to the proposed agreement whereby Swift Chemical Company, a subsidiary of Esmark, would purchase natural gas from TransOcean (the so-called "Swift-Chem contract") during period 1974 to 1975.
   10. Documents relating to the tender offer for TransOcean stock by Vickers in 1974.

**3.** On October 3, 1977, defendants were ordered to "forthwith produce for examination by plaintiffs the documents relating to inter-company borrowings between Esmark and TransOcean from 1972 to 1974 and the documents relating to the tender offer for TransOcean stock by Vickers in 1974, which defendants stated in their memorandum in opposition to plaintiffs' motion to compel production of privileged documents they are willing to produce to plaintiffs."

in concluding that certain testimony sought should be required. *Id.* at 214. His opinion, however, did not illuminate who has the burden with respect to the good cause question. In a footnote he simply noted that the court in *Garner v. Wolfinbarger, supra,* "outlined a set of criteria for determining when there is 'good cause' not to give effect to the privilege." *Id.*

Although the case does not mention the term "good cause," language in *Valente v. Pepsico, Inc., supra* at 367, seems to place the burden on defendants: "the corporation is not entitled to claim the privilege as against its own shareholder, absent some special cause."

On the other hand, the Fifth Circuit places the burden on plaintiffs. In *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir. 1970), *cert. denied sub nom. Garner v. First American Life Insurance Co.,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), the Court of Appeals held that corporate management could not invoke the attorney-client privilege to protect communications between management and the attorneys for the corporation from disclosure to plaintiff shareholders who could demonstrate good cause for the disclosure. The court remanded the case for factfinding on the good cause issue. On remand, the district court determined that shareholder plaintiffs established good cause for disclosure of such communications. *Garner v. Wolfinbarger,* 56 F.R.D. 499 (S.D.Ala.1972).

Under the circumstances of this case, it is immaterial who has the burden on the good cause issue. In addition to arguing that good cause is not required, plaintiffs have assumed *arguendo* that it is required and have attempted to show that they have met the good cause test. By the same token, defendants have attempted to show how plaintiffs have failed to meet the good cause test. Accordingly, the essential issue here is whether there is a presence or absence of good cause to order the production of the documents in question.

In determining whether there is good cause, the Fifth Circuit has suggested that:

> There are many indicia that may contribute to a decision of presence or absence of good cause, among them the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. *Garner v. Wolfinbarger,* 430 F.2d 1093, 1104 (5th Cir. 1970).

In the case at bar, defendants virtually concede that most of the criteria are met. For example, defendants do not dispute that the three federal actions involve a substantial number of shareholders who are asserting securities law violations and common law claims which are "obviously colorable." Defendants do not dispute that the information plaintiffs seek is unavailable from other sources. Defendants do not assert that trade secrets are involved. Indeed, defendants' major argument that good cause is lacking is that plaintiffs seek production of documents which supposedly have nothing to do with the tender offer and the alleged breaches of their fiduciary duties.[4] They assert that in the cases relied on by plaintiffs, the courts ordered disclo-

---

4. For the reasons articulated in plaintiffs' reply memorandum, the court rejects defendants' arguments with respect to the crime/fraud exception as it relates to the fiduciary duty exception to the attorney-client privilege. To require shareholders to make a showing of fraud would undermine the important policies which led to the adoption of the fiduciary duty exception to the attorney-client privilege.

sure "only of such privileged documents which were directly related to the alleged breaches of fiduciary duty."[5] (Defendants' Brief at 24).

An argument similar to that advanced by defendants—plaintiffs should be held to a very high standard of relevance and be allowed only those documents relating directly to the tender offer and the alleged breaches of fiduciary duty—was rejected in *Broad v. Rockwell International Corp.*, *supra*. There the court stated that "the necessity or desirability of the shareholders having the information (*i. e.*, the degree of relevance) is one of many considerations mentioned in *Garner*, but the opinion does not specifically impose any higher standard of relevance in such suits." *Id.* at 91,305. The court quite correctly concluded that the "normal standards of relevance should apply absent competing considerations, *e. g.*, a special need for confidentiality beyond the policy reasons underlying attorney-client privilege."[6] *Id.*

Another reason for not holding plaintiffs to a high standard of relevance is that the attorney-client privilege obstructs free and full disclosure and should be narrowly construed.[7] *See, e. g., In Re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1972), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); *Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314, 323 (7th Cir. 1963). As Professor Wigmore has admonished:

> Nevertheless, the privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete. . . . It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of

the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle. 8 J. Wigmore, Evidence § 2291, at 554 (McNaughton rev. ed. 1961).

For the reasons set forth above, defendants' argument that plaintiffs be allowed only those documents relating directly to the tender offer and to the alleged breaches of fiduciary duty must fall. The normal standards of relevance will apply. Accordingly, the discovery sought here is to be considered relevant if there is "*any possibility* that the information sought may be relevant to the subject matter of the action," *In Re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 431 (N.D.Ill.1977), or if it "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Applying the normal standards of relevance, the court is of the opinion that the documents in the remaining eight categories are clearly relevant to the subject matter of this litigation and that the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

### Other Grounds

Although the court is highly impressed with plaintiffs' waiver arguments, it need not decide whether defendants have waived the attorney-client privilege. The court likewise finds it unnecessary to make an *in camera* inspection of the documents in question to ascertain whether defendants are properly invoking the attorney-client privilege.

### CONCLUSION

For the reasons stated, it is therefore ordered that plaintiffs' Rule 37(a) motion

---

**5.** It should be emphasized that defendants have objected to producing the documents in question on grounds of privilege; not relevance.

**6.** There was no special need for confidentiality asserted in the *Rockwell* case and none is asserted here.

**7.** Arguably, there should be a higher standard of relevance so that communications between corporate officials and their counsel will not be

"chilled." As Judge Weinstein has stated, however, "[t]his factor should not be overestimated. If the client is acting in good faith, the possibility of future disclosure is too speculative to exert much pressure; corporations need legal advice. In any event the *Garner* decision accords with modern trends in discovery." Weinstein's Evidence, ¶ 503(b)[05] at 503–51 (1976).

for an order compelling production of documents claimed by defendants to be subject to the attorney-client privilege shall be, and the same is hereby, granted.