**QUINTEL CORPORATION, N.V., Plaintiff,**

v.

**CITIBANK, N.A., Garrin Properties, Inc., Robert Ginsberg, Nelson C. Rising, John M. Rudey, Queens Park Land Developers, Nelson C. Rising and Company, Inc., and Flag Associates, L.P., Defendants.**

**CITIBANK, N.A., Third-Party Plaintiff,**

v.

**H.R. GAJRIA, Third-Party Defendant,**

**QUINTEL CORPORATION, N.V., and H.R. Gajria, Plaintiffs,**

v.

**Arnold S. ALPERSTEIN and Goldstick, Weinberger, Feldman, Alperstein & Taishoff, P.C., Defendants.**

**Nos. 80 Civ. 4936 (RWS), 82 Civ. 4856 (RWS).**

United States District Court, S.D. New York.

July 18, 1983.

---

Carro, Spanbock, Fass, Geller, Kaster & Cuiffo, New York City, for Quintel Corp. and H.R. Gajria by Charles D. Bock, Gail Edwin, Vince Lipari, New York City, of counsel.

Shearman & Sterling, New York City, for Citibank, N.A. by Mark P. Zimmet and Jonathan L. Greenblatt, New York City, of counsel.

## OPINION

SWEET, District Judge.

Certain parties to these actions, which have been consolidated for the purposes of discovery, have sought rulings from this court on controversies that have arisen during the course of discovery. Defendant/third-party plaintiff in No. 80 Civ. 4936, Citibank, N.A. ("Citibank"), seeks a protective order pursuant to Fed.R.Civ.P. 26(c) directing counsel for plaintiff Quintel Corporation, N.V. ("Quintel") and third-party defendant H.R. Gajria ("Gajria") not to inquire into certain areas allegedly protected by the attorney-client privilege. Quintel and Gajria seek an order directing Citibank's deposition witnesses not to invoke the attorney-client privilege. In addition, Citibank has objected to certain deposition questions propounded to its witnesses on the grounds that it has already testified to these matters through other witnesses and that the witness testifying did not participate in the activities that are the subject of the deposition questions in issue. As set forth below, Quintel and Gajria will be permitted to inquire into certain areas where Citibank asserts the attorney-client privilege. Citibank's objections to deposition questions will be sustained in part as described below.

### Background

These actions arise from the parties' involvement in a real estate transaction that took place in 1979. Quintel is a Netherland Antilles corporation. Gajria is a foreign citizen and, at the time of the transaction, was the sole beneficial shareholder of Quintel.[1] On August 8, 1979, Gajria entered into an Acquisition Agreement with Citibank for the purposes of acquiring certain developed real property in Florida. The property was to be acquired by defendant Flag Associates L.P., a limited partnership, of which Quintel was the limited partner.

The acquisition was closed on August 14, 1979.

The complaint in the action against Citibank alleges that Citibank and the other defendants violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, breached alleged fiduciary duties owed to Quintel, converted certain of Quintel's funds, committed fraud, and acted negligently in connection with the acquisition. Specifically, the complaint alleges, *inter alia,* that Citibank and the other defendants failed to disclose that the general partners of the limited partnership were acquiring on their own behalf certain undeveloped property adjacent to the developed real estate acquired by the limited partnership and that Quintel's funds were used by the general partners to purchase the undeveloped land. The complaint seeks damages of $2.7 million, an accounting, and imposition of a constructive trust on the undeveloped land. The complaint also seeks a declaratory judgment releasing Quintel from certain agreements it entered into with Citibank and a permanent injunction preventing the development or disposing of the land. Citibank has asserted a counterclaim for fees allegedly owed it and has impleaded Gajria on the basis of an indemnity agreement.

### The Instant Dispute

Gajria commenced the deposition of Paul L. Kalos ("Kalos"), a Citibank vice-president and counsel to its Real Estate Investment and Management Department, on April 11, 1983. Kalos was personally involved in the structuring and negotiation of the acquisition. In the course of the deposition, counsel for Citibank made numerous objections on the ground of the attorney-client privilege and directed Mr. Kalos not to answer. Counsel for Citibank also objected to certain questions on the ground that they called for information pertaining

---

1. Gajria and Quintel are for convenience referred to collectively in this opinion as "Gajria."

to the activities of another Citibank employee, Frederick Russo ("Russo"). Russo is also an attorney in Citibank's Real Estate Investment and Management Department. Citibank claims that the questions put to Kalos concerning Russo are improper because Russo has already been deposed and because Kalos was not present when Russo conducted the activities in question. The Kalos deposition was suspended and this motion resulted.

*Discussion*

This Circuit has adopted Wigmore's formulation of the elements of the attorney-client privilege:

> (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 Wigmore, *Evidence* § 2292 at 554 (McNaughton rev. 1961). *See United States v. Demauro,* 581 F.2d 50, 55 n. 4 (2d Cir.1978); *In re Horowitz,* 482 F.2d 72, 80 n. 7 (2d Cir.), *cert. denied,* 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). Quintel does not dispute that the privilege attaches to the communications sought to be shielded here. *See Upjohn Co. v. United States,* 449 U.S. 383, 389–97, 101 S.Ct. 677, 682–86, 66 L.Ed.2d 584 (1981) (privilege protects communications where client is corporation). *See also In re John Doe Corp.,* 675 F.2d 482, 487–88 (2d Cir.1982). The purpose of the attorney-client privilege is to encourage clients to make full disclosure to their attorneys. *See Upjohn v. United States, supra,* 449 U.S. at 389, 101 S.Ct. at 682; *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). As our Court of Appeals has remarked, the privilege is viewed as "essential" to the protection of the client's legal rights. *In re Horowitz, supra,* 482 F.2d at 81. "However, since the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose." *Fisher v. United States, supra,* 425 U.S. at 403, 96 S.Ct. at 1577. *See In re Horowitz, supra,* 482 F.2d at 81 (privilege ought to be strictly confined within narrowest possible limits consistent with logic of its principle) (quoting 8 Wigmore, *supra,* § 2291 at 554).

Gajria's efforts to pierce Citibank's assertion of the attorney-client privilege are spearheaded by his contention that Citibank acted as his fiduciary in connection with the acquisition and as such is prohibited from invoking the privilege against him. The primary support for this position is the line of cases that has developed from the doctrine enunciated in *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). In *Garner,* the Fifth Circuit held that a corporation's right to assert the attorney-client privilege against its shareholders "where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests" is "subject to the right of the stockholders to show cause why it should not be invoked in the particular instance." *Id.* at 1103–04. The court reasoned that management and shareholders have a "mutuality of interest" in management's "freely seeking advice when needed and putting it to use when received," *id.* at 1103, and that management does not manage for itself—"the beneficiaries of its actions are the stockholders," *id.* Thus, "management judgment must stand on its merits, not behind an ironclad veil of secrecy which under all circumstances preserves it from being questioned by those for whom it is, at least in part, exercised." *Id.* The court remanded the case to the district court for a finding as to whether there was good cause to prevent the invocation of the privilege. *See Garner v. Wolfinbarger,* 56 F.R.D. 499 (S.D.Ala.1972) (on remand, finding good cause for disclosure).

The rationale of *Garner* has been followed by several courts where corporate

management has attempted to shield communications from shareholders on the basis of the attorney-client privilege. *See, e.g., Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 21 (N.D.Ill.1980); *Cohen v. Uniroyal, Inc.,* 80 F.R.D. 480 (E.D.Pa.1978); *Panter v. Marshall Field & Co.,* 80 F.R.D. 718 (N.D.Ill. 1978); *In re Transocean Tender Offer Securities Litigation,* 78 F.R.D. 692 (N.D.Ill. 1978); *Bailey v. Meister Brau, Inc.,* 55 F.R.D. 211 (N.D.Ill.1972); *Broad v. Rockwell Int'l Corp.,* [1976–77 Transfer Binder], Fed.Sec.L.Rep. (CCH) ¶ 95,894 (N.D.Tex. 1977). *See also George v. LeBlanc,* 78 F.R.D. 281 (N.D.Tex.), *aff'd,* 565 F.2d 1213 (5th Cir.1977).

Other courts have extended the *Garner* doctrine to other factual situations. For example, in *Valente v. Pepsico,* 68 F.R.D. 361 (D.Del.1975), minority shareholders and warrant holders of Wilson Sporting Goods Co. ("Wilson") sued Pepsico, Inc. ("Pepsico") for alleged violations of the federal securities laws in connection with a short form merger whereby Wilson was merged into Pepsico. Pepsico had earlier acquired a majority interest in Wilson. In the course of the lawsuit by the Wilson holders, Pepsico objected to the production of certain documents because they allegedly contained communications from counsel for Pepsico. The court noted that *Garner* had some relevance, but was not controlling because the plaintiffs sought information not from their own corporation but from a separate corporation that was a controlling shareholder in theirs. 68 F.R.D. at 367. Nevertheless, because Pepsico, as the majority shareholder in Wilson, had fiduciary obligations that ran to the Wilson minority, it could not shield communications that touched upon the interests of the minority and the duties owed to the minority. *Id.* at 369. "A fiduciary owes the obligation to his beneficiaries to go about his duties without obscuring his reasons from the legitimate inquiries of the beneficiaries." *Id.* at 370. The court held, therefore, that the privilege's purpose of encouraging attorney-client confidence was outweighed by the "more general and

important right of those who look to fiduciaries to safeguard their interests to be able to determine the proper functioning of the fiduciary." *Id.* at 370 n. 16.

Two courts have applied the *Garner* doctrine outside the corporate shareholder litigation context. In *Donovan v. Fitzsimmons,* 90 F.R.D. 583 (N.D.Ill.1981), the Secretary of Labor sought certain documents from a pension fund in the course of an action commenced pursuant to the Employees Retirement Income Security Act of 1975 ("ERISA"), 29 U.S.C. §§ 1001–1461. The court noted that there was no "compelling justification" against extending the *Garner* rule from the corporate fiduciary context to pension fund trustee situations. In both situations the fiduciary exercises authority not for himself but for the beneficiaries, and the need for monitoring of the fiduciary's activities is the same in both contexts. The court noted in particular that "the *Garner* approach is not premised on concepts peculiar to corporate law, but rather has its underpinning in the common law of trust relationships." 90 F.R.D. at 586. Thus, the court rejected the pension fund's claims of privilege.

In *Washington-Baltimore Newspaper Guild v. Washington Star Co.,* 543 F.Supp. 906 (D.D.C.1982), the beneficiaries of an employees' benefit plan commenced an action under ERISA claiming breach of fiduciary duty. One of the arguments advanced in support of the court's holding that the attorney-client privilege could not be asserted against the plaintiffs was the *Garner* doctrine. *See also United States v. DeLillo,* 448 F.Supp. 840, 841 (E.D.N.Y. 1978); 2 *Weinstein's Evidence* ¶ 503(b)[05] (1982).

The *Garner* case was discussed by this court in *In re Colocotronis Tanker Securities Litigation,* 449 F.Supp. 828 (S.D.N.Y. 1978). The plaintiffs in *Colocotronis* were various banks who had entered into participation agreements with the defendant European-American Banking Corporation ("EABC") concerning loans made to a

group of shipping companies. The plaintiff banks sought certain documents from EABC which EABC claimed were subject to the attorney-client privilege. This court described the *Garner* case and its progeny, noting that in each case it was found that the strength of the fiduciary relationship at issue outweighed the interests protected by the attorney-client privilege. 449 F.Supp. at 838. It was held, however, that the *Garner* doctrine did not apply to the facts in *Colocotronis* because the key element of a fiduciary relationship was absent:

> Here, the plaintiff banks entered into participation agreements with EABC in which rights and duties were clearly delineated and benefits clearly stated. The fact that EABC occupied a central position in these transactions and that EABC managed the loans whose profitability would inure to the benefit of the plaintiffs does not mean that these agreements established a special fiduciary or trust relationship. The indicia of such a situation are not present here. Rather, these agreements are arms-length contracts between relatively sophisticated financial institutions and do not establish fiduciary relationships such as exist between the management of a corporation and the corporation's shareholders or even its debenture holders.

*Id.* (citations omitted).

■ Turning to the facts of this case, there is no real dispute on this motion that Citibank acted as Gajria's fiduciary in the course of the acquisition at issue. The Acquisition Agreement executed between Gajria and Citibank on August 8, 1979 contains several provisions that grant Citibank broad discretion to operate as Gajria's agent and attorney-in-fact in the acquisition. For example, the Agreement recites that "Citibank shall do any and all acts in the Client's name, place and stead, deemed by it necessary and advisable in connection with the acquisition of said property" and that Citibank is "granted the complete and sole discretion to negotiate any and all outstanding terms and conditions of a selected investment proposal," with certain exceptions. Another provision states that:

> Citibank will coordinate the closing and will acquire the property for the Client, at the Client's sole risk and expense. In order to complete said acquisition, Citibank may take any and all actions which Citibank deems, in its sole discretion, necessary or advisable. In this regard Citibank may execute and at Citibank's request, the Client agrees to execute any and all instruments, powers and documents deemed by Citibank necessary and advisable to facilitate the acquisition. Furthermore, Citibank has the Client's full and complete authorization to establish any accounts, debit any existing or newly established accounts, and/or arrange any transfer of funds in order to complete the acquisition.

In addition, the brochure Citibank distributed describing its Real Estate Investment and Management Department states at the outset that the Department "functions as an asset manager and acquisition fiduciary on behalf of Citibank clients." Moreover, Citibank's fiduciary capacity is confirmed by an internal Citibank memorandum to files written by Marie Corbett ("Corbett"), an Assistant Vice President in the International Services Division who was personally involved in Citibank's dealings with Gajria. The memorandum, which was written after the acquisition "to summarize a problem which has arisen regarding the [Quintel/Gajria] real estate transaction since it was closed on August 14, 1979," states that Citibank acted as "investment advisors with a fiduciary responsibility toward our client." Another internal Citibank memorandum, written by Lawrence J. O'Brien, an Assistant Vice President personally involved in the transaction, notes that a significant factor in "placing this deal" was the fact that Gajria trusted Corbett.

Citibank's position as Gajria's agent and attorney-in-fact is sufficient to establish its status as a fiduciary. *See Laub v. Genway*

*Corp.,* 60 F.R.D. 462, 466–67 (S.D.N.Y.1973); *In re DeBelardino,* 77 Misc.2d 253, 256–57, 352 N.Y.S.2d 858, 862–63 (Surr.Ct.Monroe County 1974), *aff'd,* 47 A.D.2d 589, 363 N.Y. S.2d 974 (4th Dep't 1975); *Restatement (Second) Agency* §§ 13, 387 (1958). The degree of control over the transaction exercised by Citibank, coupled with the reliance placed on Citibank by Gajria, reinforces this conclusion. *See United States v. Margiotta,* 688 F.2d 108, 122–125 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *Penato v. George,* 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904–05 (2d Dep't 1976), *appeal dismissed,* 42 N.Y.2d 908, 397 N.Y.S.2d 1004, 366 N.E.2d 1358 (1977); *Mobil Oil Corp. v. Rubenfeld,* 72 Misc.2d 392, 399–400, 339 N.Y.S.2d 623, 632 (Civ.Ct. Queens County 1972), *aff'd,* 77 Misc.2d 962, 357 N.Y.S.2d 589 (Sup.Ct.App. Term 1974), *rev'd on other grounds,* 48 A.D.2d 428, 370 N.Y.S.2d 943 (2d Dep't 1975), *aff'd,* 40 N.Y.2d 936, 390 N.Y.S.2d 57, 358 N.E.2d 882 (1976).

The question therefore is whether Citibank, despite its capacity as a fiduciary, may now shield the communications of its counsel from its beneficiary, Gajria. Under the authorities discussed above, and under the facts of this case, it is appropriate to apply the *Garner* rule and permit inquiry into Citibank's communications made in furtherance of its fiduciary responsibilities to Gajria. Here, as in *Garner,* Citibank and Gajria had a mutuality of interest in the consummation of the acquisition on the most advantageous terms. Citibank acted not for itself but for Gajria, in similar fashion to corporate management's actions taken on behalf of the corporations shareholders. Here, as in *Garner* and *Valente* and the ERISA cases, the fiduciary's duty to exercise its authority without veiling its reasons from the grantor of that authority outweighs the fiduciary's interest in the confidentiality of its attorney's communications. The *Garner* rule stems not only from the general proposition that a beneficiary is entitled to know how the authority he has granted has been exercised but on the rec-

ognition that because of the mutuality of interest between the parties, the faithful fiduciary has nothing to hide from his beneficiary. *See Valente v. Pepsico, Inc., supra,* 68 F.R.D. at 369 n. 16.

Citibank suggests that *Garner* has been limited to the corporate shareholders litigation context and cites the *Colocotronis* case for this proposition. In *Colocotronis,* however, the *Garner* rule did not apply because there was no fiduciary relationship between the parties. Also, as the ERISA cases illustrate, *Garner* has been extended beyond its original context and is not based on considerations peculiar to the corporate context. *See Donovan v. Fitzsimmons, supra.* Rather, as noted in *Valente,* it is based upon the interests and relationship of the parties. *See* 68 F.R.D. at 367–70.

The conclusion that the *Garner* rule applies to the facts of this case does not end the inquiry. Under *Garner,* the party seeking disclosure of privileged communications must demonstrate good cause why the privilege should not be invoked. Further, Citibank asserts that the *Garner* doctrine does not permit disclosure of communications made prior to the creation of the fiduciary relationship or after the termination of the relationship. In addition, Citibank argues that it is not obliged under the *Garner* rationale to disclose communications made during its fiduciary relationship where such communications were intended to guide Citibank in determining the extent of its obligations to Gajria.

With respect to communications made after the termination of the fiduciary relationship, i.e., subsequent to the closing of the acquisition on August 14, 1979, the privilege attaches. The parties' interests were no longer mutual after this point and, in fact, diverged following an August 15, 1979 meeting described in the Corbett memorandum. Hence, *Garner* has no application.

The disclosure of communications made prior to the establishment of the parties' fiduciary relationship poses a more difficult question. Gajria notes the general proposi-

tion that an agent is obligated to make full disclosure to its principal of all material facts within its knowledge whenever learned. *See Restatement (Second) Agency* § 381 (1958). This duty does not easily translate, however, into the context where the parties are in litigation subsequent to the termination of their relationship nor, in fact, does it nicely fit the *Garner* rationale. Prior to the investor's entry on the scene the important mutuality of interest is absent since Citibank's interest is in putting together a proposal that it can sell to the investor, an interest not shared by the investor. On the other hand, the investor, in entering into the agency/fiduciary relationship with the investment advisor, does have an interest in knowing of the activities undertaken prior to the establishment of the agency/fiduciary relationship. Nevertheless, this interest does not outweigh the interest in free, confidential communication between attorney and client that is protected by the privilege during the period that Citibank is working for its own interests prior to the arrival of the investor.

Citibank contends that during the period of its fiduciary relationship with Gajria that its communications made for the purpose of obtaining guidance with respect to its obligations to Gajria are privileged. These communications were made, however, as part of and in furtherance of its fiduciary obligations to Gajria. Hence, they may not be shielded by the attorney-client privilege.

Finally, the *Garner* "good cause" requirement is met here. The information sought is important to Gajria's case and its only source is apparently the testimony of Kalos. Within the boundaries enumerated above, there is no danger of revealing advice concerning this litigation. Further, Gajria has alleged a colorable claim. *See Garner, supra,* 430 F.2d at 1104.

In sum, Citibank will not be permitted to assert the attorney-client privilege with respect to communications made during the course of Citibank's fiduciary relationship with Gajria. Citibank's objections with respect to disclosure of privileged communications occurring prior to and subsequent to the period of the fiduciary relationship will be sustained.

■ Gajria's other arguments in support of his efforts to pierce the attorney-client privilege can be dealt with briefly. He contends first that Citibank's in-house lawyers acted as his attorneys as well as Citibank's and that as such they may not assert the attorney-client privilege against him. The "joint client" exception to the attorney-client privilege is well-recognized. An attorney who represents two parties with respect to a single matter may not assert the privilege in a later dispute between the clients. *In re Colocotronis Tanker Securities Litigation, supra,* 449 F.Supp. at 830. *See Simpson v. Motorists Mutual Ins. Co.,* 494 F.2d 850 (7th Cir.), *cert. denied,* 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974); 8 Wigmore, *supra,* § 2312. The exception only applies, however, where the attorney actually represented both parties. *Colocotronis, supra,* 449 F.Supp. at 830–31. The fact that Citibank attorneys engaged in negotiations and performed legal services in connection with the acquisition does not make Gajria the client of these attorneys. *See id.* at 832 (services of law firms ultimately redounded to benefit of plaintiff banks, but no attorney-client relationship found). Gajria retained his own counsel to represent him in connection with the acquisition. Also, the Acquisition Agreement signed by Gajria contains a clause noting the need for legal counsel and reciting that counsel had in fact been retained. The fact that Gajria was ultimately displeased with the representation provided by his counsel, who he is suing for malpractice, is irrelevant.

■■ Gajria also argues that Citibank has waived the attorney-client privilege through the disclosure of the Corbett memorandum referred to above and through deposition testimony given by Corbett. It is axiomatic, however, that the privilege is

not waived unless confidential matter is disclosed, since disclosure is inconsistent with the intention of retaining confidentiality. *See In re John Doe Corp.,* 675 F.2d 482, 489 (2d Cir.1982); *United States v. AT & T,* 642 F.2d 1285, 1299 (D.C.Cir.1980). Neither the Corbett memorandum nor Corbett's testimony reveals communications by or with counsel that could be construed as confidential. *See Teachers Ins. & Annuity Ass'n v. Shamrock Broadcasting Co.,* 521 F.Supp. 638, 641 (S.D.N.Y.1981). Hence, no intention of waiver, express or implied, is present.

■ Finally, Gajria asserts that the attorney-client privilege does not adhere to the communications at issue because they were made in furtherance of the commission of a fraud. This exception to the privilege applies where a prima facie showing of fraud has been made by the party seeking disclosure. *See In re Grand Jury Proceedings,* 680 F.2d 1026, 1028–29 (5th Cir.1982); *In re Special September 1978 Grand Jury,* 640 F.2d 49, 59 (7th Cir.1980); *Garner v. Wolfinbarger, supra,* 430 F.2d at 1102. *Cf. In re John Doe Corp., supra,* 675 F.2d at 491. At this stage, no such showing has been made. Gajria cites merely to deposition testimony to the effect that Kalos told Gajria on August 8, 1979 that a certain exhibit to the Limited Partnership Agreement was not yet ready, and that Kalos had previously discussed the conveyance of undeveloped land. This evidence does not constitute a prima facie showing of the elements of a fraud. *See Mallis v. Bankers Trust Co.,* 615 F.2d 68, 80 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981).

Citibank has objected to questions put to Kalos at his deposition concerning the activities of other Citibank personnel. This objection will be sustained to the extent that it pertains to questions seeking information about which Kalos has no personal knowledge. The objection will be overruled as to matters within Kalos's personal knowledge.

For the reasons stated above, Citibank will not be permitted to assert the attorney-client privilege with respect to communications occurring during its fiduciary relationship with Gajria. Citibank's objections to deposition questions are sustained as described.

IT IS SO ORDERED.