Raymond J. DONOVAN, Secretary of Labor, Plaintiff,

v.

Frank FITZSIMMONS, et al., Defendants.

No. 78 C 342.

United States District Court, N. D. Illinois, E. D.

June 8, 1981.

584

Richard P. Carr, Bruce Renaldi, S. Michael Scadron, Susan A. Slattery, U. S. Dept. of Labor, Sp. Litigation Staff, Washington, D. C., for plaintiff.

James L. Coghlan, William J. Nellis, David J. MaGee, Coghlan, Joyce & Nellis, Chicago, Ill., for defendants Central States, Southeast & Southwest Areas Pension Fund.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff, Raymond J. Donovan, Secretary of Labor, (the "Secretary"), has moved pursuant to Rule 37(a) of the Federal Rules of Civil Procedure ("FRCP") for an order compelling the production of certain records of the Central States, Southeast and Southwest Areas Pension Fund ("Central States" or "Fund"). Underlying this discovery dispute is an action filed by the Secretary under the Employees Retirement Income Security Act of 1975 ("ERISA") alleging that various former Central States officials violated their fiduciary responsibilities by entering into a series of questionable investment transactions. At issue now is the assertion of the attorney-client privilege and work product immunity over various documents held by the Fund.

The documents over which an order is sought may be divided into two discrete categories: those documents already tendered to the Department of Labor ("DOL") voluntarily by Central States, and those communications from Central States' counsel that have yet to be produced either in this litigation or in a prior administrative investigation by the Secretary.[1] For the reasons set forth below, it is held that any applicable privileges have been waived with respect to the former group of documents. As to the others, however, although Central States' claim of attorney-client privilege must fail, the documents appear to be within the work product immunity and thus are not subject generally to disclosure. As these documents have not been tendered to the court at this time, the parties are directed to proceed with discovery in accordance with the principles set out in this memorandum. Any remaining disputes on this account should be presented at subsequent pre-trial conferences.

### A. Documents Tendered in 1976–1977.

In the course of a DOL administrative investigation, and pursuant to a "Memorandum of Understanding" between the Department and Central States, numerous documents were voluntarily turned over to the government in 1976 and 1977. Central States was afforded the right to withhold any document on grounds of privilege at that time and failed to do so. Under these circumstances, Central States does not seriously contend that the "mantle of confidentiality which once protected the documents" still remains. *In re Grand Jury Investigation of Ocean Transportation,* 604 F.2d 672, 675 (D.C.Cir.1979). Moreover, by producing the documents to DOL without a protective order, thereby subjecting them to departmental processing and FOIA requests, such disclosure substantially increased the possibility that an opposing party could obtain the information which was disclosed. *GAF Corp. v. Eastman Kodak Co.,* 85 F.R.D. 46, 51–53 (S.D.N.Y.1979); *Indian Law Resource Center v. Department of Interior,* 477 F.Supp. 144, 148 (D.D.C.1979). In light of these facts, Central States must be deemed to have waived both the attorney-client privilege and the work product immunity as to the documents given to DOL in 1976 and 1977.

### B. Post 1977 Documents.

As gleaned from the memoranda, the primary focus of the current discovery impasse is on those documents not produced during the prior administrative investigation and now sought by DOL. The Department's position is that under the doctrine of *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir. 1970) and its progeny, the Fund may not assert any privilege claims against the Secretary in an action alleging fiduciary misconduct under ERISA. Central States' response is multi-leveled. The Fund first urges the court to reject the *Garner* rationale as poorly reasoned. Alternatively, the Fund argues that *Garner* is not applicable here where the Secretary, and not the purported beneficiaries of the Pension Fund, has filed suit. Failing this, Central States argues that if *Garner* applies at all, it lifts only the attorney-client privilege and does not eviscerate any protection afforded by the work product immunity.

In *Garner v. Wolfinbarger, supra,* a panel of the Fifth Circuit qualified the application of the attorney-client privilege in suits brought by beneficiaries against their fiduciaries alleging breach of duty. *Garner* itself was a derivative action against various corporate officers and directors alleging common law and statutory fraud in connection with the purchase and sale of securities. Defendants raised the attorney-client privilege when called upon to testify and produce subpoenaed records. In analyzing the privilege claim the court considered that, "in assessing management assertions of injury to the corporation it must be borne in mind that management does not

---

1. DOL does not seek access to otherwise privileged documents arising from the claims it advances in this lawsuit.

manage for itself and that the beneficiaries of its action are the stockholders. . . . [M]anagement has duties which run to the benefit ultimately of the stockholders." 430 F.2d at 1101.

In light of these concerns, the Fifth Circuit considered the recognition of an absolute privilege inappropriate in derivative actions. Rather the court fashioned a "good cause" exception to the privilege as follows:

> [W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Garner v. Wolfinbarger*, 430 F.2d at 1103–1104.

Although the Fund generally characterizes *Garner* as a radical departure from settled principles, it cites no authority nor forwards any strong argument for jettisoning its approach. To the contrary, the *Garner* approach is well-reasoned. It adequately assures the public interest in attorney-client confidentiality, yet acknowledges that disclosure must prevail in those limited circumstances in which beneficiaries of corporate fiduciaries show a valid need for information. As such, it is hardly surprising that the Fifth Circuit's approach has received relatively wide acceptance in shareholder actions seeking the disclosure of privileged corporate information. *See e. g., In re Transocean Tender Offer Securities Litigation*, 78 F.R.D. 692 (N.D.Ill.1978); *In re Colocotronis Tanker Securities Litigation*, 449 F.Supp. 828 (S.D.N.Y.1978); *Cohen v. Uniroyal, Inc.*, 80 F.R.D. 480 (E.D.Pa. 1978); *George v. LeBlanc*, 78 F.R.D. 281 (N.D.Tex.1977); *Bailey v. Meister Brau, Inc.*, 55 F.R.D. 211 (N.D.Ill.1972).

■ Central States also has failed to suggest a compelling justification against extending the *Garner* rule from the corporate fiduciary context to pension fund trustee situations. In both instances, fiduciaries exercise their authority not for themselves but for the benefit of their beneficiaries. Just as corporate shareholders may have need for access to information to determine whether that authority is being exercised as contemplated, so do pensioners and potential recipients of fund assets share that same need. Moreover, the *Garner* approach is not premised on concepts peculiar to corporate law, but rather has its underpinning in the common law of trust relationships. *Garner v. Wolfinbarger, supra* at 1101–1102. While this court need not decide whether the *Garner* rule is applicable in all fiduciary situations, it is apparent that the pension fund trustee analogue to the derivative action is particularly well-suited to the rule's application. *See Riggs National Bank v. Zimmer*, 355 A.2d 709, 712 (Del.Cir. 1976). Cf. *Boswell v. IBEW*, No. 79–2571 (D.N.J. January 6, 1981).

■ Indeed, the only really close question raised by the briefs is whether the Secretary's status is sufficiently similar to the beneficiaries of the pension fund so as to enable him to invoke the *Garner* analysis. In this court's view there exists such a sufficient identity of interests. In § 502(a) of ERISA, 29 U.S.C. § 1132(a), the Secretary has been delegated specifically the authority to sue in the interest of pension plan beneficiaries. The legislative goal was to ensure more effective enforcement of the statutory standards governing pension plans and plan fiduciaries than could be obtained through reliance only on private beneficiary actions. S.Rep.No.127, 93rd Cong., 2d Sess. 36 (1974), reprinted in 1974 U.S.Code Cong. & Admin.News 4639, 4838, 4871. In a real sense, therefore, the Secretary is acting on behalf and in the interests of the plan beneficiaries in this suit. Concededly, at a later time the interests of the participants and DOL might somewhat diverge (with DOL more interested in establishing a broad precedent to deter pension plan maladministration and the beneficiaries more interested in securing maximum restitution to the Fund for the payment of benefits). But at this point, both DOL and the plan's participants have exactly the

same interest, securing complete disclosure in order to ferret out and discover any past wrongdoing affecting the Fund. Given this identity of interests there is no principled basis for precluding the Secretary from raising a *Garner*-type rationale to defeat Central States' claims of attorney-client privilege.

Finally, there is little doubt that the "good cause" showing required under *Garner* has been satisfied here. The Secretary seeks restitution on behalf of all of the approximately 500,000 potential beneficiaries of the Central States Fund. There can be no contention that this is a lawsuit involving only a handful of disgruntled pensioners or a small minority of the Fund's participants. In addition, the documents sought do not contain recommendations regarding the Fund's litigation strategy in the instant case. Rather, this information is necessary to meet the potential defense of the former trustees of reliance upon counsel in entering the prior transactions subject to current dispute. Still further, it cannot be argued that the Secretary's claims are not brought in good faith or that the request for production is part of a "fishing expedition" through Central States' files by DOL. The claim is at least colorable and the materials to which privilege has been claimed are limited in scope and directly relevant to discrete issues in this action. Accordingly, Central States' claims based on the attorney-client privilege are rejected.

■ The fiduciary exception carved out in *Garner*, however, does not translate so easily into the context of the work-product immunity. Unlike the attorney-client privilege, the right to assert the work product barrier to disclosure belongs at least in part, if not solely, to the attorney and not the client. *In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798, 801 n.4 (3d Cir. 1979); *Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 725 n.7 (N.D.Ill.1978); *Hercules v. Exxon Corp.*, 434 F.Supp. 136, 156 (D.Del.1977). *See also, Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir. 1973). More to the point, the two privileges address different concerns. Not only does the work-product doctrine serve to protect the confidentiality in the attorney-client relationship, but it also protects the attorney from undue and unfair disclosure. As the Supreme Court noted in *Hickman v. Taylor*, 329 U.S. 495, 510–511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947):

> In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel . . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal briefs, and countless other tangible and intangible ways—aptly though roughly termed . . . the "work product . . . of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten.

*See also, Upjohn Co. v. United States*, —— U.S. ——, 101 S.Ct. 677, 66 L.Ed.2d 584, 49 U.S.L.W. 4093 (Jan. 13, 1981); *United States v. Nobles*, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).

These "strong public policy" concerns for an attorney's privacy, *United States v. Nobles, supra* at 236–240, 95 S.Ct. at 2169–2171, have been substantially incorporated in F.R.C.P. 26(b)(3), which provides for discovery only upon a showing of "substantial need" and "undue hardship" in obtaining the substantial equivalent of the information by other means.

■ In recognition of the fact that the attorney-client privilege and the work-product immunity serve somewhat different concerns, those courts which have employed a *Garner*-type analysis to the attorney-client privilege question have not extended that rationale to work-product issues. *See e. g., Panter v. Marshall Field & Co., supra; Cohen v. Uniroyal, Inc., supra.* In this court's view, such a bifurcated analysis is appropriate. The *Garner* rule forecloses the use of the attorney-client privilege, itself intended for the ultimate benefit of the *client,* to prevent disclosure of a breach of

the client's trust. Shareholders or beneficiaries, however, do not stand in the same position with respect to the *attorney*, for whom the work-product rule is designed to benefit, as they do to their own trustees. And as a result, the *Garner* analysis cannot be readily applied to defeat the work-product rule.

The fact that the *Garner* analysis defeats the attorney-client privilege, but not the work-product immunity, raises some unique problems in the present context. This litigation concerns allegations of massive breaches of fiduciary duties by former Central States trustees by entering into what DOL considers to be highly questionable investment transactions. Necessarily at issue in this case is the question of what information concerning these investments were the trustees privy to and the defense of "reliance upon the advice of counsel." To prove its affirmative case of fiduciary violations and to rebut any possible reliance defense the Department seeks to discover memoranda and correspondence between the Fund and its counsel. In the ordinary course of litigation, work-product considerations are pretermitted since other communications between an attorney and his client are subject to the available privilege, which ends the inquiry. Here, however, in light of *Garner* and its progeny, these work-product considerations are germane and the question is to what extent does that doctrine affect disclosure here.

■ The problem is a tricky one, requiring a recognition of the purposes of the work-product doctrine but tempered by the interests in disclosure acknowledged by *Garner* lest the work-product immunity swallow up the *Garner* exception in its entirety. The first step in striking a proper balance is to return to the modern foundations of the privilege articulated in *Hickman v. Taylor, supra* and codified in Rule 26(b)(3). The core of the privilege is to protect against the disclosure of the private mental impressions, conclusions and opinions of the attorney. Yet neither *Hickman* nor the Federal Rules view the protection of these interests as absolute. Rather, the

immunity is subject to a good cause showing. That is, a party may obtain discovery of such materials upon a showing of "substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).

■ In the court's view the circumstances of this case warrant the presumptive application of this exception. Because the nature of this case involves the facts of the communications to the Central States trustees as a prelude to their investment decisions, certain documents presumptively subject to the work-product doctrine may not be withheld from disclosure. Similarly, to the extent that the "advice of counsel" is a critical area of inquiry in this case, the interests in attorney privacy must yield to the need of the Department, as the representative of the Central States participants and beneficiaries, to discover this material. *Bird v. Penn Central Company*, 61 F.R.D. 43 (E.D.Pa.1973). *Accord Truck Insurance Exchange v. St. Paul Fire & Marine Insurance Co.*, 66 F.R.D. 129, 136 (E.D.Pa.1975); *Bourget v. Government Employees Insurance Co.*, 48 F.R.D. 29 (D.Conn.1969); see also, 4 Moore's Federal Practice, § 26.64[4] at 26–447 (2d Ed. 1974), where Professors Moore and Lucas comment:

> The authors suggest that while Rule 26(b)(3) provides that protection against discovery of the attorney's or representative's "mental impressions, conclusions, opinions, or legal theories" *shall* be provided, such protection would not screen information directly at issue.

Accordingly, insofar as any documents relate to what information was provided to or relied on by the former Central States trustees, the "work-product" privilege does not bar their disclosure to the Department of Labor.