Albert HELT

v.

The METROPOLITAN DISTRICT
COMMISSION.

Civ. No. H–82–971 (TEC).

United States District Court,
D. Connecticut.

May 15, 1986.

Sikorsky & Sikorsky, Old Lyme, Conn., for plaintiff.

Byrne, Slater, Sandler & Levine, Hartford, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY

CLARIE, Senior District Judge.

In this sex discrimination action, the plaintiff has moved for an order of the Court compelling the defendant to provide him with certain documents relating to its pension plan. The defendant has objected on grounds that the documents requested are protected by the attorney-client privilege. Because the Court finds that neither the privilege nor the work product doctrine applies to these documents, and also that several of them are irrelevant, the plaintiff's motion to compel discovery is granted in part and denied in part.

### Facts

This action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), to seek redress for discrimination in employment on the basis of sex. The plaintiff, who is male, retired from the Metropolitan District Commission (MDC) after thirty-two years of service under its early retirement program at the age of sixty. The gravamen of his complaint is

that the MDC's "G-1 Retirement System" discriminated against him. The plan provided that women could retire at the age of sixty-two, while men were required to wait until age sixty-five. Early retirement was an option for employees of both sexes, with a six percent reduction in benefits for each extra year elected. According to the complaint, this system caused the plaintiff's retirement benefits to be reduced by thirty percent, while a similarly situated female's benefits would have been reduced only by twelve percent. The complaint seeks damages and attorneys fees.

On November 25, 1981, the plaintiff filed complaints with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission. This action was commenced on October 6, 1982. The Court denied the plaintiff's motion for class certification on March 8, 1985, finding that he failed to satisfy the typicality and fair and adequate representation requirements of Fed.R. Civ.P. 23(a)(3) and (4).

The instant motion to compel, dated October 9, 1985, is a renewal of that motion first filed by the plaintiff on February 9, 1984. The production requests at issue were filed on November 23, 1983; the only request now at issue is request number two:

"Produce all documents interpreting and/or requesting interpretation of the retirement plans (other than individual benefit calculations) including but not limited to Section Glg of the January 19, 1967 G-1 Retirement System and Section Gle 1.e of the November 7, 1979 G-1 Retirement System. Included but not limited to documents internal to Metropolitan District Commission and by and between Metropolitan District Commission and Aetna employees and/or Sandler, Levine and Keppleman."

The defendant's first response to this request was as follows:

"Defendant provided documents of which it has knowledge requesting or formally interpreting the 1979 pension plan at the deposition of David W. An-

drews on November 21, 1983. Informal interpretations of the 1979 pension plan that may be reflected in notes or documents in legal files of Sandler, Levine and Keppleman P.C. or other legal counsel are objected to because such a request violates the attorney client privilege or work product doctrine.

"Defendant objects to the production of all documents interpreting or requesting interpretation of pension plans from 1952 to 1979 on the following grounds:

"a. Some or all of the information requested is irrelevant and/or not reasonably calculated to lead to admissible evidence;

"b. The request is too broad, vague and imprecise;

"c. The request is overly broad and oppressive; and,

"d. The request violates the attorney-client privilege."

The defendant's second response to the plaintiff's second production request identified the documents now subject to the defendant's claim of privilege:

"Defendant has previously supplied a response to this request. Defendant claims the following documents are protected by the attorney-client privilege.

"1. May 12, 1981 letter from Jeffrey M. Winnick, Esq. to David W. Andrews re: Retirement System for Employees.

"2. May 6, 1981 letter from Jeffrey M. Winnick to David W. Andrews re: District Pension Plan.

"3. July 10, 1980 Letter from James P. Sandler to John C. Usher re: Pension Ordinance Interpretation.

"4. November 13, 1979 letter from Richard T. Keppleman, Esq. to David W. Andrews re: Retirement Incentive Plan.

"5. October 31, 1979 letter from Richard T. Keppleman, Esq. to David W. Andrews re: Alternative Early Retirement Plan.

"The District is continuing to review its files to determine if other documents interpreting or relating to the interpretation of the 1979 plan exist. If such doc-

uments are located, this response will be supplemented.

"Defendant specifically incorporates by reference its objections concerning pension plans from 1952–1979, made in its December 29, 1983 response."

Argument of counsel on the plaintiff's motion to compel a response to its second request for production was heard by the Court on November 4, 1985. On November 5, 1985, the Court provisionally granted the plaintiff's motion in part, ordering the defendant to submit the identified correspondence to the Court *in camera* so that it might ascertain relevance.

### Discussion of Law

#### A.  Attorney-Client Privilege

The defendant, in opposition to the plaintiff's motion to compel, invokes the attorney-client privilege and, in the alternative, the work product doctrine. Specifically, it claims that the five letters described in its response to the plaintiff's request are privileged communications between the MDC and its attorneys. Even in the absence of privilege, the defendant contends that these documents constitute the work product of its attorneys and therefore can be disclosed only upon a showing of need under Fed.R.Civ.P. 26(b)(3).

While the attorney-client privilege ordinarily shields from disclosure confidential communications between an attorney and his client, the plaintiff in this case has identified an exception to the general rule. When a fiduciary communicates with its attorneys about a fund it administers for the benefit of others, courts have held that the attorney-client privilege does not operate to conceal from the beneficiaries information about the fund. Put another way, the attorneys are considered to be working for the fund and its beneficiaries and not for the fiduciary/administrator.

This corollary to the attorney-client privilege had its origin in the Fifth Circuit case of *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 423 (1971). In *Garner*, the court qualified the attorney-client privilege in a stockholder's derivative action:

"Where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance."

430 F.2d at 1103. This was a narrow restriction of the privilege, appropriate only when the stockholder could show "good cause" why the privilege should not be available to the corporation.

Other courts have extended this concept to other fiduciary relationships, including the one at issue here, that of a pension fund trustee or administrator and the plan's beneficiaries. *See Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494 (D.Conn.1985); *Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 543 F.Supp. 906 (D.D.C.1982); *Donovan v. Fitzsimmons*, 90 F.R.D. 583 (N.D.Ill.1981). *But see Arney v. Geo. A. Hormel & Co.*, 53 F.R.D. 179, 182 (D.Minn.1971) (characterizing communications from attorneys to corporate executives administering plan as "opinions ... not directed to the trustee but to the settlor who is asserting the privilege").[1]

While the attorney may nominally serve the employer, the employer's roles must be distinguished: "despite an employer's close involvement with and funding of the Plan, it nevertheless exists as a fully separate entity." *Washington-Baltimore Newspaper Guild*, 543 F.Supp. at 910. Thus "[w]hen an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the at-

---

**1.** Although he has identified the applicable body of case law, the plaintiff misconstrues its meaning. No waiver of the privilege is involved. Rather, the courts have determined that the privilege should not be available to a fiduciary to shield from his beneficiary information about the fund.

torney's client is not the fiduciary personally but, rather, the trust's beneficiaries." *Washington-Baltimore Newspaper Guild*, 543 F.Supp. at 909. *See Petz*, 113 F.R.D. at 497. As in *Garner*, the underlying principle is that it would be paradoxical for "use of the attorney-client privilege, itself intended for the ultimate benefit of the *client*, to prevent discovery of a breach of the client's trust." *Donovan*, 90 F.R.D. at 587–88. *See also Valente v. Pepsico*, 68 F.R.D. 361, 370 n. 16 (D.Del.1975) (in corporate context, recognizing "important right ... to determine the proper functioning of the fiduciary").

Two courts have explicitly rejected the *Garner* court's requirement that the party seeking discovery establish good cause why the attorney-client privilege should not apply. *Washington-Baltimore Newspaper Guild*, 543 F.Supp. at 909 n. 5; *Donovan*, 90 F.R.D. at 586. Another court is silent on the issue but does not appear to require such a showing. *Petz*, 113 F.R.D. at 496–97. Instead, the courts either simply reject the claim of privilege or balance the nature of the fiduciary relationship with the fiduciary's interest in confidentiality. *Petz*, at 497; *Quintel Corp. v. Citibank*, 567 F.Supp. 1357, 1362–63 (S.D.N.Y.1983).

Despite the defendant's contention to the contrary at the time of oral argument, the plaintiff in this case must be considered a beneficiary of MDC's Retirement System, from which he currently receives benefits. As such this case is clearly analogous to others involving disputes between pension fund beneficiaries or their representative and the plan's fiduciaries. *Donovan v. Fitzsimmons* involved a suit by the Secretary of Labor under the Employees Retirement Income Security Act of 1974, 29

U.S.C. § 1001 *et seq.* (ERISA) claiming that the administrator of the Central States Pension Fund had breached his duty to some 500,000 potential beneficiaries by means of improper investment of fund assets. 90 F.R.D. 586–87. The *Donovan* court held that the attorney-client privilege would not protect the fiduciary's communications with its attorney from discovery by the Secretary as the beneficiaries' representative. *Id.* at 587–88. *Washington-Baltimore Newspaper Guild v. Washington Star Co.* was an action by a union and several of its members (beneficiaries of a pension plan) against the plan's administrator (the employer) claiming improper amendment of the Trust Agreement constituting a breach of fiduciary duty under ERISA. 543 F.Supp. at 907. There too the plan administrator's claim of privilege was rejected. *Id.* at 910. Finally, just last year a court in this District had occasion to address a similar case. In *Petz v. Ethan Allen, Inc.*, Magistrate Smith, whose ruling was adopted, approved and ratified by Chief Judge Daly, rejected the defendants' attempt to assert the attorney-client privilege in an ERISA case involving a claimed breach of fiduciary duty. There the plaintiff had been discharged and sought, to discover, *inter alia*, "documents relevant to plaintiff's claims under ERISA and held by defendants' counsel." *Petz*, 113 F.R.D. at 496.

The instant case, involving as it does a claim by a retirement plan beneficiary against the plan's administrator to recover benefits denied him by an alleged violation of Title VII, is, at least on the question of the attorney-client privilege, indistinguishable from those discussed above.[2] The

---

**2.** The Court is inclined to agree with those courts that, despite *Garner*, have not required the beneficiary to establish "good cause" for the privilege not to apply. But the presence of such "good cause" in this case makes it unnecessary to decide the issue.

Among the "many indicia" identified as relevant factors in the "good cause" inquiry by the *Garner* court, 430 F.2d at 1104, are:

    a. "[T]he number of shareholders and the percentage of stock they represent." Con-

cededly this litigation involves only one beneficiary. As such the case is unlike *Donovan*, where the Secretary of Labor brought the action on behalf of some 500,000 fund participants. 90 F.R.D. at 587.

    b. "[T]he bona fides of the shareholders." The Court has no basis for questioning the plaintiff's good faith.

    c. "[T]he nature of the shareholders' claim and whether it is obviously colorable." Based

Court concludes that the attorney-client privilege does not protect MDC's "communications made for the purpose of obtaining guidance with respect to its obligations" to its beneficiaries. *See Quintel*, 567 F.Supp. at 1364. The privilege does not preclude discovery of the correspondence at issue here.

## B. *Work Product*

■ Even in the absence of a valid privilege, communications between an attorney and his client prepared in anticipation of litigation may nonetheless be protected from disclosure by the work product doctrine. This qualified privilege owes its formulation to the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and has since been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. The *Hickman* Court observed:

"In performance of his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal briefs, and countless other tangible and intangible ways—aptly though roughly termed ... the "work product ... of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten."

329 U.S. at 510–11, 67 S.Ct. at 393. Thus discovery of such materials was limited to those instances when "denial ... would unduly prejudice the preparation of petitioner's case," or "cause hardship or insustice." *Id.* at 509–10, 67 S.Ct. at 393. The Court's aim was to protect from disclosure the attorney's mental impressions, conclusions, opinions, or legal theories. *Id.* at 510–13, 67 S.Ct. at 393–95. *See* Fed.R. Civ.P. 26(b)(3).

The work product doctrine is now governed by the rules of practice:

"[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney ...) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equiva-

on the record developed thus far, the plaintiff's claim must be considered "colorable."
d. "[T]he apparent necessity or desirability of the shareholders having the information and the availability of it from other sources." Certainly information about the fiduciary's interpretation of the plan would be very useful to the plaintiff. It is unlikely that the plaintiff would be able to discover these communications from any other source.
e. "[W]hether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality." The claim is one of sex discrimination, and while such conduct, if proven, would be wrongful, the Court cannot say that this factor weighs in favor of disclosure.
f. "[W]hether the communication related to past or to prospective actions." Since the documents interpret an existing plan, they concern past actions; disclosure would not reveal any future plans of the defendant.
g. "[W]hether the communication is of advice concerning the litigation itself." As is clear from the discussion *infra* on the subject of the work product doctrine, there can be no claim that the documents relate to the instant litigation.
h. "[T]he extent to which the communication is identified versus the extent to which the shareholders are blindly fishing." The original request was sufficiently specific, and the defendant's response has identified as possibly relevant only the five documents at issue here. The plaintiff cannot be accused of "blindly fishing."
i. "[T]he risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons." The defendant has expressed no such interest, nor can the Court contemplate any.
In light of these factors, on balance the Court is persuaded that were *Garner's* "good cause" requirement imposed upon the plaintiff in this case, the result would still be to deny the defendant the benefit of the attorney-client privilege.

lent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Fed.R.Civ.P. 26(b)(3). The doctrine comports with our notion of fair play within an adversarial system of justice, "the view that each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." Fed. R.Civ.P. 26(b)(3) advisory committee note.

The work product doctrine may properly be invoked in the present context despite the unavailability of the attorney-client privilege. The plaintiff does "not stand in the same position with respect to the *attorney*, for whom the work-product rule is designed to benefit, as [he does to his] own trustees. And as a result, the *Garner* analysis cannot be readily applied to defeat the work-product rule." *Donovan*, 90 F.R.D. at 588.

Applying the doctrine to the facts of this case, the defendant, as the party invoking the qualified privilege, has the burden of establishing that the documents were prepared "in anticipation of litigation." *United States v. American Telephone & Telegraph Co.*, 86 F.R.D. 603, 627 (D.D.C. 1979). Only then is the plaintiff required to make his showing of "substantial need" and "undue hardship." Here the inquiry is a simple one, since the defendant has failed to persuade the court that the documents in question were prepared "in anticipation of litigation."

To qualify, the documents must have been prepared "any time after initiation of the proceeding or such earlier time as the party who normally would initiate the proceeding had tentatively formulated a claim, demand or charge." *American Telephone & Telegraph*, 86 F.R.D. at 627. The defendant "must establish the date when he

received a demand or warning of charges or information from an outside source that a claim, demand, or charge was in prospect." *Id.* In this case the defendant filed no brief in support of its claim of work product immunity. At oral argument, counsel for the defendant suggested that the Court might look to the date of the plaintiff's administrative filings as triggering the protections of the doctrine, though counsel could not recall the relevant date. The record reveals that the plaintiff filed his CHRO and EEOC complaints were filed on November 25, 1981. He received notice of right to sue on July 26, 1982, and this proceeding was "initiated" on October 6, 1982. Presumably the defendant also had notice of the administrative complaints of November, 1981. But the letters in question were written between October 31, 1979 and May 12, 1981. Thus in light of the defendant's failure to establish some earlier date when it had "received a demand or warning of charges or information from an outside source that a claim, demand, or charge was in prospect," *id.*, the Court is constrained to find the work product doctrine inapposite.

### C. *Relevance*

The unavailability of the attorney-client privilege and the work product doctrine does not mean that the plaintiff may discover the documents at issue as a matter of course. They must still be "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). The Court has determined that of the five items of correspondence, only two, the letters of May 6, 1981 and May 12, 1981 from Jeffrey Winnick to David Andrews are relevant to the plaintiff's claim. They involve interpretation of the age requirements of the defendant's Retirement System and employee contributions to the plan, and must be disclosed.

### *Conclusion*

The Court finds that the attorney-client privilege and the work product doctrine do not shield the documents at issue here

from discovery. Yet the Court also finds that only two of the five letters are relevant to this dispute. Accordingly, the plaintiff's motion to compel is granted in part and denied in part; the defendant is ordered to produce copies of the May 6, 1981 and May 12, 1981 letters from Jeffrey Winnick to David Andrews.

SO ORDERED.