**Richard B. NELLIS, et al., Plaintiffs,**

**v.**

**AIR LINE PILOTS ASSOCIATION, et al., Defendants.**

**Civ. A. No. 92–771–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 9, 1992.

---

Joan Marie Canny, Graeme Bush, Caplin & Drysdale, Washington, D.C., for plaintiffs.

Harvey B. Cohen, Brian P. Gettings, Cohen, Gettings & Dunham, Arlington, Va., James L. Linsey, Cohen, Weiss & Simon, New York City, for defendants.

## MEMORANDUM OPINION

BRINKEMA, United States Magistrate Judge.

This matter is presently before the Court on plaintiffs' Motion to Compel Defendants to Produce Documents. Defendants object, claiming that the 56 groups of documents [1] listed in their Privilege Log are protected by the attorney-client privilege and/or the work product doctrine. Plaintiffs argue that the union defendants are not entitled to assert such a defense against union members under the fiduciary-beneficiary

---

1. Plaintiffs stipulated during oral argument that documents in groups 6, 15 and 56 were protected under the work product doctrine thereby reducing the number of Privilege Log entries at issue from 59 to 56.

exception to the attorney-client privilege. For the reasons that follow, plaintiffs' motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Defendant Air Line Pilots Association (hereinafter "ALPA") is a national labor organization that represents airline pilots at over thirty airlines, as well as pilots on several airlines which have ceased operations and are in the process of liquidating their assets. ALPA is a unitary labor organization with a single constitution and by-laws that govern all subordinate bodies and members. Under its structure, ALPA is the recognized collective bargaining representative for the pilots in each airline. Each of ALPA's operating airlines has a Master Executive Council (hereinafter "MEC") which is composed of elected pilot representatives from the pilot employees at each airline. The MECs function as the coordinating council for the ALPA-represented employees at each airline. Most significantly under this structure, the individual MECs do not represent the pilot employees at the other ALPA-represented carriers. Furthermore, these MECs have their own separate legal counsel.

Plaintiffs brought this class action on behalf of approximately 2,400 Eastern Airlines (hereinafter "EAL") "strike" pilots against ALPA and individual defendants who are either officers of ALPA or its MECs, alleging, among other charges, that defendants breached their contractual, fiduciary and fair representation duties, and interfered with the prospective employment of the Class. Specifically, plaintiffs allege that ALPA and its officers failed to apply the union's "Merger–Fragmentation Policy" in good faith following the transfers of EAL's assets which resulted from EAL's dissolution. The ALPA Merger–Fragmentation Policy provides that ALPA will take all steps necessary to ensure that when an airline sells or transfers assets, such as planes or routes, the acquiring airline employs an appropriate number of the seller's pilots. Plaintiffs argue that the document requests at issue relate directly to ALPA's and the defendant MEC's interpretation of the Merger–Fragmentation Policy and their respective duties under the policy.

## II. LEGAL BACKGROUND

■ The attorney-client privilege, as recognized at common law, has been incorporated into the Federal Rules of Evidence. *See* Fed.R.Evid. 501 (1991); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984). The purpose of the privilege is to promote "full and frank communication between attorneys and their clients" and to serve the public interest in the administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). However, the Fourth Circuit has held:

> Since the privilege "impedes [the] full and free discovery of the truth," and is "in derogation of the public's 'right to every man's evidence,'" *it is not "favored" by federal courts.* Accordingly the privilege is to be "'strictly confined within the narrowest possible limits consistent with the logic of its principle.'"

*In re Grand Jury Proceedings*, 727 F.2d at 1355 (quoting *Herbert v. Lando*, 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115 (1979); *see, United States v. (UNDER SEAL)*, 748 F.2d 871, 875 (4th Cir.1984), *vacated on other grounds*, 757 F.2d 600 (4th Cir.1985) (attorney-client privilege must be strictly construed).

### A. The Fiduciary–Beneficiary Exception

■ The fiduciary-beneficiary exception is an example of how federal courts have attempted to strictly construe the attorney-client privilege. Established by the Fifth Circuit in *Garner v. Wolfinbarger*, 430 F.2d 1093 (1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), the exception requires a court to weigh the interests of a fiduciary who opposes production of relevant information by invoking the attorney-client privilege against its own beneficiaries.[2] The *Garner* court deter-

---

**2.** While *Garner* was decided in the context of a shareholder derivative action against the corpo- ration and its officers and has been applied as such by other courts, *See, e.g., Heyman v. Bea-*

mined that when beneficiaries sue a fiduciary for behavior allegedly inimical their interests, the availability of the attorney-client privilege should "be subject to the right of the [beneficiary] to show cause why it should not be invoked in the particular instance." 430 F.2d at 1103–04. In weighing these interests, a court should attempt to balance the extent of the beneficiaries' interests in the lawsuit and the likelihood of harm to those interests against the harm to the fiduciary's management flexibility. *Cohen v. Uniroyal, Inc.*, 80 F.R.D. 480, 483 (E.D.Pa.1978).

■ Defendants argue that the fiduciary-beneficiary exception should not be applied in this case because the fiduciary relationship between ALPA and its members is lacking. At least two other district courts, however, have applied the *Garner* doctrine in very similar cases involving a union's assertion of the attorney-client privilege against union members in suits alleging a violation of the union's duty of fair representation. *Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671 (D.Kan.1986); *Boswell v. International Bhd. of Elec. Workers Local 164*, 106 L.R.R.M. (BNA) 2713, 1981 WL 27188 (D.N.J.1981). Moreover, the Supreme Court's recent decision in *Air Line Pilots Ass'n, Int'l v. O'Neill*, makes it clear that the "duty of fair representation is ... akin to the duty owed by other fiduciaries to their beneficiaries." —— U.S. ——, ——, 111 S.Ct. 1127, 1134, 113 L.Ed.2d 51 (1991). This language conclusively establishes that labor unions owe a fiduciary duty to their members.[3] To the

extent, therefore, that plaintiffs are able to demonstrate that "good cause" exists under *Garner* as to each category of documents, otherwise privileged documents must be disclosed by the defendants.

### B. The Work Product Doctrine

Developed in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and codified in Federal Rule of Civil Procedure 26(b)(3) (1991), the work product doctrine protects materials prepared by an attorney in anticipation of litigation, absent a showing of necessity or justification for disclosure by the party seeking the documents. The party claiming the doctrine must show that the material involves "documents and tangible things ... prepared in anticipation of litigation for trial by or for another party or by or for that other party's representative."

■ Unlike the attorney-client privilege, the work product doctrine is not designed to protect client confidentiality; rather, it seeks to shelter "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975). Therefore, many courts have refused to apply the *Garner* fiduciary-beneficiary exception to the work product doctrine. *In re Systems & Controls Corp.*, 693 F.2d 1235 (5th Cir.1982); *See also, Helt v. Metropolitan Dist. Comm'n*, 113 F.R.D. 7 (D.Conn.1986). *But compare, Aguinaga v. John Morrell & Co.*, 112 F.R.D. 671 (D.Kan.1986).

---

*trice Co., Inc.*, No. 89–C–7381, 1992 WL 97232, 1992 U.S. Dist. LEXIS 6153 (N.D.Ill. May 1, 1992); *Valente v. Pepsico, Inc.*, 68 F.R.D. 361 (D.Del.1975); a number of courts have applied the fiduciary-beneficiary exception to cases involving other types of fiduciary relationships. *See, e.g., In re Sunrise Sec. Litig.*, 130 F.R.D. 560 (E.D.Pa.1989) (law firm with conflicting fiduciary duties to itself and client); *Helt v. Metropolitan Dist. Comm'n*, 113 F.R.D. 7 (D.Conn.1986) (employee benefit plan); *Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494 (D.Conn.1985) (ERISA plan); *Quintel Corp., N.V. v. Citibank, N.A.*, 567 F.Supp. 1357 (S.D.N.Y.1983) (bank acting as fiduciary for purchaser in land acquisition transaction); *Washington–Baltimore Newspaper Guild Local 35 v. Washington Star Co.*, 543 F.Supp. 906 (D.D.C.1982) (pension fund trustee);

*Donovan v. Fitzsimmons*, 90 F.R.D. 583 (N.D.Ill. 1981) (union ERISA pension fund); *In re Baldwin–United Corp.*, 38 B.R. 802 (Bankr.S.D.Ohio 1984) (bankruptcy creditors' committee).

In fact, the Fifth Circuit, which created the doctrine, made it clear that the *Garner* exception was not limited to derivative suits by current shareholders. *In re International Systems & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1239 n. 1 (5th Cir.1982).

**3.** It should be noted, however, that "[b]efore *O'Neill*, it was by no means settled that a union had a fiduciary duty toward all of its members." *Le'Mon v. National Labor Relations Board*, 952 F.2d 1203 (10th Cir.1991).

## III. ANALYSIS

Because the defendants have separated the 56 documents at issue into distinct categories, the Court will address them in the same fashion. Overall, as set out in *Garner*, 430 F.2d at 1104, plaintiffs have adequately demonstrated with respect to all 56 documents that plaintiffs' class represents nearly all of those pilots affected by ALPA's alleged failure to properly implement the Merger–Fragmentation Policy; plaintiffs' suit is brought in good faith and is obviously colorable; the complaint alleges significant instances of wrongful conduct by the union involving its fiduciary and fair representation duties; the privileged communications sought relate to ALPA's past conduct rather than prospective conduct; the documents at issue are clearly identifiable and relevant; and there is no risk of revealing trade secrets.

### 1. Communications between ALPA officials and ALPA attorneys concerning legal advice and legal proceedings

■ These documents involve legal advice provided to ALPA officials by ALPA in-house and outside general counsel on matters directly related to the interests of the EAL union members. Many of the documents specifically detail ALPA's intent, understanding and implementation of the Merger–Fragmentation Policy which is the central issue in this case and bears directly on ALPA's fiduciary and fair representation duties. Since many of ALPA's actions that allegedly injured the plaintiffs were done after ALPA received confidential advice from counsel regarding the union's obligations under the Merger–Fragmentation Policy, there are no alternative sources from which the plaintiffs can seek discovery on this issue.[4] For these reasons, this Court finds that plaintiffs have demonstrated good cause under the fiduciary-beneficiary exception to overcome any attorney-client privilege as to documents in groups 1, 2, 3, 5, 10, 11, 12, 13, 25, 26, 28, 29, 30, 31, 41, 42, 46, 47, 48, 50, 51, 52, 53, 54 and 57 of the Privilege Log.

### 2. Communications between individual MECs or MEC officials and MEC merger counsel concerning legal advice and legal proceedings

■ This category includes communications made by MECs and/or their merger counsel to ALPA officials and communications of the individual MECs with their own counsel concerning ALPA merger policy usually relating to disputes or negotiations between two different ALPA MECs. The relationship between the individual MECs who attempt to influence ALPA policy for their own constituencies is inherently adversarial. While the MECs utilize ALPA's in-house legal staff for legal issues arising in collective bargaining, they retain independent merger counsel for internal matters to advise and represent them in merger negotiations. These independent merger counsels are solely accountable to the individual MEC they represent.

Because there is no fiduciary duty owed the plaintiffs by the individual non-EAL MECs and their merger counsel, the fiduciary-beneficiary exception is not applicable to documents in groups 4, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27, 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 44, 45, 55, 58 and 59 which are protected by the attorney-client privilege.

### 3. Notes of ALPA attorneys that contain ALPA's mental impressions and legal opinions

■ The documents in groups 7, 8 and 14, are no different from those placed by the defendants in the first category. Although they consist of handwritten notes and legal memoranda created by ALPA counsel, defendants have failed to establish that they were prepared in anticipation of litigation as required under the work product doctrine. These documents represent ALPA's interpretation of its obligations and rights under its own constitution and

---

4. Defendants represented to the Court during oral argument that they were not claiming a good faith reliance on advice of counsel defense in this case. If such a defense were made, plaintiffs, by necessity, would be granted access to these documents by the Court without having to evaluate the criteria for the fiduciary-beneficiary exception.

by-laws and relate directly to the plaintiffs' interests. They are exempt, therefore, from the attorney-client privilege under the *Garner* exception.

#### 4. *Work product or trial preparation materials*

 Defendants argue that documents in groups 9, 12, 13 and 57 are protected by the work product doctrine. The Court has also added documents in group 49 to this category. Although groups 9 and 49 are protected under the work product doctrine, defendants have failed to demonstrate that documents in groups 12, 13 and 57 were prepared in anticipation of litigation. Groups 12, 13 and 57 contain nothing more than the general legal advice and memoranda documents included in the first category of documents for which no privilege has been found.

#### IV. CONCLUSION

For the foregoing reasons, plaintiffs' Motion to Compel Defendants to Produce Documents is GRANTED IN PART and DENIED IN PART.