In re JMP NEWCOR INTERNATIONAL, INC., Debtor.

**Bankruptcy No. 95 B 27353.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 5, 1997.

Malcolm Gaynor, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for Debtor.

Seyfarth, Shaw, Fairweather & Geraldson.

## MEMORANDUM OPINION

RONALD BARLIANT, United States Bankruptcy Judge.

■ On December 10, 1996, this Court entered an Order ("Production Order") granting the Debtor's Motion to Compel Production of Documents and ordering Seyfarth, Shaw, Fairweather & Geraldson ("Seyfarth") to produce various documents that they had claimed were protected by the attorney-client privilege or the attorney work-product doctrine. Presently before this Court is Seyfarth's Motion to Reconsider the Production Order[1] only as it relates to four volumes of handwritten attorney notes ("Notes") prepared by Seyfarth in connection with its representation of the Unsecured Creditors' Committee. Seyfarth contends that the Notes are protected by the work-product doctrine. For the reasons set forth below, Seyfarth's Motion to Reconsider is granted and the Production Order will be modified in accordance with this opinion.

## DISCUSSION

The protection of attorney work-product has been incorporated into Fed.R.Civ.P. 26(b)(3) (made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7026). That section provides, in relevant part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means. *In ordering discovery of such materials when the required showing*

has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

It is the last sentence (emphasized) that recognizes the greater protection afforded *opinion* work-product, which is at issue here. In *Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981), the Court held that, "Opinion work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." Rather, a "far stronger showing" is required. See also, *In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977) (Opinion work product discovered only in "rare and extraordinary circumstances.") No such showing has been made here.

■ In ordering production of the Notes, this Court concluded that the attorney-client privilege ceased to exist when the Creditors Committee (the client) ceased to exist upon confirmation of a plan. This conclusion failed to recognize the distinction between the attorney-client privilege and the work-product doctrine. As Seyfarth has correctly pointed out, the work-product doctrine is different than the attorney-client privilege. The attorney-client privilege belongs to the client, but the work-product doctrine belongs to both the attorney and the client. *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir.1980); *Donovan v. Fitzsimmons*, 90 F.R.D. 583, 587 (N.D.Ill.1981) ("Unlike the attorney-client privilege, the right to assert the work product barrier to disclosure belongs at least in part, if not solely, to the attorney and not the client.") In addition, the Supreme Court has determined that the work-product protection continues ever after the litigation is completed. *FTC v. Grolier, Inc.*, 462 U.S. 19, 26, 103 S.Ct. 2209, 2213–14, 76 L.Ed.2d 387 (1983).[2]

1. The Debtor argues that the Motion to Reconsider does not comply with Fed.R.Civ.P. 59 (applicable here under Fed.R.Bankr.P. 9023) and is merely an attempt to reargue issues that could have been argued earlier. Rule 59 is not applicable since the Production Order was not a final, appealable order.

2. A prerequisite to the doctrine is that the notes, etc., have been prepared in contemplation of

litigation. There is no doubt that the Notes were prepared in contemplation of litigation. The Creditors' Committee retained Seyfarth shortly before and to represent them in a contested confirmation hearing. The fees accrued by Seyfarth, that are the heart of the present dispute, all relate to that contested hearing and work done in preparation of that hearing.

■ Notwithstanding the strong protection afforded opinion work-product, an exception has been created where the activities of counsel are directly in issue. *Charlotte Motor Speedway, Inc. v. International Ins. Co.,* 125 F.R.D. 127 (M.D.N.C.1989). The Debtor argues that Seyfarth has waived the work-product doctrine by putting their representation of the Committee "at issue" by requesting payment of their fees.

The argument may have surface appeal. Seyfarth is trying to establish the reasonableness of their fees, and that brings their work, strategy and other actions into question. But the strong protection afforded attorney work-product requires the rejection of that argument in the bankruptcy context.

■ Requests for fees are commonplace in bankruptcy cases. So are objections to those requests. Applying the Debtor's argument that work-product loses its privilege when there is a dispute about fees would mean that every time a committee objected to a debtor's professional's fee request, or a debtor objected to a lender's request for professional fees under § 506(c), that professional's opinion work-product would be discoverable.[3] The practical effect of such a rule would be to defeat the fundamental policies that underlie the work-product privilege. In future cases, attorneys would know that their opinion work-product might be subject to disclosure. That knowledge would inhibit professionals in those future cases.

None of the cases relied upon by the Debtor involved the attorney's conduct being "at issue" because of a request for payment of fees. *Donovan v. Fitzsimmons,* 90 F.R.D. 583 (N.D.Ill.1981) involved a suit by the Secretary of Labor against a plan trustee for breach of fiduciary duty. The trustees defended on the grounds that they relied on an advice of counsel, which called into question what advice counsel had given. The court balanced the need for disclosure against the

need for protection and concluded that documents relating to advise concerning investment information had to be produced.[4] In *Frazier v. S.E. Pa. Transp. Authority,* 161 F.R.D. 309, 320 (E.D.Penn.1995) the attorney was *not* required to disclose "opinion work-product relating to issues such as trial strategy, strengths and weaknesses of the case, and the like." Rather, discovery was limited to surveillance action taken in the underlying action.

The exception is most frequently applied when the attorney is a defendant against a charge of professional negligence or breach of duty. *See In re Sunrise Securities Litigation,* 130 F.R.D. 560 (E.D.Pa.1989); *Securities and Exchange Comm. v. National Student Marketing Corp.,* 18 F.R.Serv.2d 1302 (D.D.C.1974). The other area where the "at issue waiver" is frequently raised is in "bad faith" insurance litigation, where the insurer is sued for the position taken in the underlying coverage litigation. *See Dixie Mill Supply Co., Inc. v. Continental Casualty Co.,* 168 F.R.D. 554 (E.D.La.1996) and cases discussed therein. The court in *Dixie Mill* was equally concerned that blanket waivers should not be found every time a claim of "bad faith" or an affirmative defense of "good faith" is raised.

Furthermore, there are other, less prejudicial, ways to obtain the information sought. For instance, if the Debtor is concerned about what Seyfarth did to support their objection to the Debtor's liquidation analysis or the committee's position on new value, it can simply ask that question in an interrogatory or deposition. This method of obtaining the information is much less prejudicial than allowing free access to highly protected documents. *See Comeau v. Rupp,* 142 F.R.D. 683 (D.Kan.1992) (suggesting the defendant attempt to obtain the information through other discovery methods); *Dixie Mill,* 168

---

**3.** That does not mean that there will never be an instance in fee disputes where the exception is applicable. Every case involves a balancing of the equities and thus turn on its particular facts. *Donovan v. Fitzsimmons,* 90 F.R.D. 583 (N.D.Ill. 1981)

**4.** The court in *Donovan* incorrectly held that work product is discoverable "upon a showing of

'substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.'" The Supreme Court expressly rejected this standard for production of opinion work product in *Upjohn.*

F.R.D. at 559. *Cf. Sunrise Securities,* 130 F.R.D. at 568.

## CONCLUSION

The Notes sought by the Debtor go to the very heart of the work-product doctrine. They contain the attorneys' on the spot mental impressions, thoughts and strategies and are not subject to discovery absent proof that there is at least a compelling need for the documents. No such need has been shown. That the attorneys' fees for its services are in dispute does not give rise to an "at issue" waiver of the work-product doctrine. Accordingly, Seyfarth's Motion for Reconsideration is granted.

An Order will be entered accordingly.